Sol Wachtler, J.
In an action for defamation and for invasion of the plaintiff’s right of privacy, the defendants bring these four motions attacking the complaint.
Francis Waters, the plaintiff, is a former employee of the Federal Bureau of Narcotics. He brings this action for invasion of privacy and for defamation.
The defendants require introduction. Robin Moore authored a book entitled “ The French Connection ”. The latter assigned its interest to Little Brown & Co., which published and distributed the book. Bantam Books, Inc., did the same as Little Brown. Phillip D’Antoni Productions, Inc., made the book into a movie and Twentieth Century Fox Film Corp. distributed the movie throughout the State. So alleges the plaintiff’s first verified complaint.
The essence of the complaint against those defendants involved with the book is that the book uses plaintiff’s name and photograph, without his written consent, for purposes of trade and business, and thereby violates his statutory right to privacy (Civil Rights Law, §§ 50, 51). The plaintiff says that *373 the book contains £ 1 numerous untruths and material distortion of facts and defamatory accusations Thus defamation is also alleged.
The complaint against D ’Antoni Productions, Inc. and Twentieth 'Century Fox is that the ££ motion picture attempts to depict the narcotic investigation in which plaintiff Waters took part” and that it uses plaintiff’s ££ character ” for trade or advertising without his consent and in violation of his right to privacy. 1 ‘ Numerous untruths and matters of a defamatory nature to plaintiff ’ ’ are also alleged.
The following motions are now before the court. D’Antoni and Twentieth Century urge that the complaint fails to state a cause of action against them for invasion of privacy. Little Brown and Bantam assert that the defamation claims against them must be dismissed because they fail to set forth the defamatory language. Robin Moore points to the same defect in the defamation claim, asks for the same relief, and alternatively asks that the defective complaint be amended. Plaintiff Waters cross-moves for leave to amend his complaint by separately stating the causes of action in defamation and by setting forth the defamatory language. In addition, his proposed amended complaint adds on Edward Egan as a party defendant. Egan was a New York City police detective who worked with plaintiff during the investigation of the incidents with which the book and movie are concerned, and he allegedly provided much of the information upon which both the book and movie are based.
Objections to the initial complaint based upon its failure to set forth the particular words alleged to constitute libel are well taken (CPLR 3016, ,subd. [a]). Equally appropriate however, is plaintiff’s motion for leave to serve an amended complaint correcting the defective pleading (CPLR 3025, subd. [b] ; 3 W einstein-Kor n-Miller, N. Y. Civ. Prac., par. 3025.24). Since granting the motion to amend renders the motion to dismiss substantially moot, the latter need not be pursued. The defendants, however, should not thereby be precluded from moving as they see fit with regard to the amended complaint (see CPLR 3211 subd. [e]) and leave to do so is hereby granted (CPLR 3025, subd. [b]). Plaintiff is also granted leave to join Edward Egan as a party defendant (CPLR 1003).
The single remaining question is whether the amended complaint sets forth a cause of action for violation of the plaintiff’s statutory right to privacy under the Civil Rights Law against D ’Antoni as the producer and Twentieth Century Fox as the distributor of “ The French Connection ”.
*374 Viewed in the light most favorable to the plaintiff, the essence of the amended complaint, read together with the supporting affidavits, is this, insofar as it concerns the motion picture. “ The French Connection ”, authored by Robin Moore, purports to he a “ non-fiction narrative ” concerning a heroin smuggling investigation in which the plaintiff, .then a Federal narcotic agent, and Edward Egan, then a New York City detective, took prominent parts. In the hook, the plaintiff is accurately named and his photograph appears. The plaintiff claims that the ‘ ‘ nonfiction narrative ’ ’ contains ‘ ‘ numerous false statements of fact”. His claim against those concerned with the book for invasion of privacy is not put in issue here. However, he claims that the hook was adapted into a motion picture by the same name and that the motion picture ‘ ‘ attempts to depict the narcotic investigation in which plaintiff Waters took part ”. There is then an allegation that these defendants “used plaintiff’s name, portrait or picture for purposes of trade or advertising within .the State of New York ”. It is clear, however, that this allegation is not intended literally. In his initial complaint, the parallel paragraph indicated that these defendants employed plaintiff’s “character” in their motion picture. The motion picture does not use the plaintiff’s name or picture. What the plaintiff really means is set forth in his affidavit: ‘ ‘ There is no doubt in my mind that the agent Mulderig in the motion picture is Frank Waters. His appearance resembles mine at the time and moreover he is the agent who becomes involved in an altercation with Detective Doyle.” His attorney’s affidavit is to the same effect. Without attaching any particular significance to labels, this allegation may fairly he read ,to mean that agent Waters in the book is “ ehaeterized ” by agent Mulderig in the movie, just as Edward Egan in the book is characterized by Detective Doyle in the movie.
The plaintiff also alleges that both the hook and the movie were jointly promoted by all defendants as a “true story”. Thus, it is said, D ’Antoni and Twentieth Century “ adopted, assumed and published the use of plaintiff’s name, portrait or picture as hereinbefore alleged, against defendants Moore, R. & J. Moore, Inc., Egan, Little and Bantam”. The movie, it is alleged, also contained numerous untruths regarding the plaintiff. Finally, the defendants’ brief observes .that the motion picture indicates it is “ based upon the book by Robin Moore ” and contains a statement that “ all characters, events and persons depicted in the film are ‘ fictitious ’ ’ ’,
*375 The question to be answered may thus be restated: Does the motion picture dramatization of an actual incident violate the statutory privacy right (Civil Rights Law, §§ 50, 51) of an individual involved if that person’s “ name, portrait, or picture ” are not employed? And does the answer change by virtue of an allegation that the incident is inaccurately portrayed or that the individual is popularly known or may be readily ascertained by reference to external sources?
Spahn v. Julian Messner, Inc. (18 N Y 2d 324) tells us that the statute is violated by a substantially fictitious biography concerning a well-known individual. To quote the Court of Appeals: “It may be appropriate to say that the plaintiff here, Warren Spahn, is a public presonality and that, insofar as his professional career is involved, he is substantially without a right to privacy. That is not to say, however, that his ‘ personality ’ may be fictionalized and that, as fictionalized, it may be exploited for the defendant’s commercial benefit through the medium of an unauthorized biography” (18 N Y 2d 324, 328). In Spahn, of course, the plaintiff’s name was used repeatedly in a book which purported to be his biography. “ The French Connection” identifies itself as “fictitious ”, albeit based on an actual event, does not purport to be a biography, and does not use the plaintiff’s name. It is thus significantly distinguishable.
Koussevitzky v. Allen, Towne & Heath (188 Misc. 479) makes the same point, but in the context of a substantially accurate biography, it concludes that the statute is not violated. “ There are statements in the book which the plaintiff might naturally find to be highly objectionable, if he is at all sensitive about those things. He may be able to prove some of them to be untrue and even defamatory. There are, however, no so-called revelations of any intimate details which would tend to outrage public tolerance. There is nothing repugnant to one’s sense of decency or that takes the book out of the realm of the legitimate dissemination of information on a subject of general interest ” (188 Misc. 479, 485; cf. Goelet v. Confidential, Inc., 5 A D 2d 226). Thus it is clear that “ truth ”, in and of itself, even defamation, is not at the essence of the right to privacy. ‘ ‘ Truth or falsity does not, of itself, determine whether the publication comes within the ban of .sections 50 and 51 ” (Koussevitzky, supra, p. 484).
Neither is .the test whether an individual’s identity can be ascertained from his involvement with the actual event or by reference to external sources (Toscani v. Hersey, 271 App. Div. *376 445; University of Notre Dame v. Twentieth Century-Fox, 22 A D 2d 452). In the Toscani case, plaintiff charged that the book and play “A Bell for Adano ” were based upon a true incident, and that the plaintiff was portrayed in both as the central character under a fictitious name. In reliance on Binns v. Vitagraph Co. (210 N. Y. 51) plaintiff argued that the statutory language, “ portrait or picture ”, includes “ any representation of a living person which would include one in words or substance describing events that would be recognizable as acts and events of and concerning a living person” (Toscani v. Hersey, supra, p. 448). The court rejected this argument. The statute “was not intended to give a living person a cause of action for damages based on the mere portrayal of acts and events concerning a person designated fictitiously in a novel or play merely because the actual experiences of the living person had been similar to the acts and events so narrated. To so construe the statute would broaden its scope far beyond anything warranted by the meaning that would ordinarily be ascribed to the words ‘ name, portrait or picture ’, especially when they are considered in the light of the history of the statute ” (271 App. Div. 445, 448).
University of Notre Dame v. Twentieth Century-Fox (22 A D 2d 452) is equally to the point. “ John G-oldfarb, Please Come Home ’ ’ was a broad farce concerning the plaintiff university. The book twice mentioned the university’s president, Father Hesberg, but his name is not used at all in the film. His claim for invasion of privacy was dismissed concerning the book because the references to him were of a “ fleeting and incidental nature ” and concerning the movie because “ the film does not use his ‘ name, portrait or picture ’, the statutory test of identification ”. To quote the court: “We do not think this test is satisfied by the conjunction of the fact that the book names him and the fact that the cover pages, of the paperback edition which in no way refer to him or his coplaintiff, laud the film” (22 A D 2d 452, 455). In the present case, the attempted conjunction between book and film is identical, and equally unsuccessful. The ¡statute is not designed to permit a bootstrap operation of this nature.
Finally, the court is unaware of any case in this State which sustained a cause of action under the statute where the plaintiff’s “ name, portrait or picture ” was not employed (see, e.g., Binns v. Vitagraph Co., 210 N. Y. 51; Button v. Hearst Corp., 277 App. Div. 155). The conclusion is thus inevitable that valid *377 causes of action for invasion of privacy are not stated against D ’Antoni Productions and Twentieth Century.
New York’s privacy statute strikes a delicate balance between the free dissemination of ideas and individual privacy. The former is paramount. The latter, though applied liberally to achieve its laudatory purpose, is subordinate to the principle of a free press.
Accordingly, plaintiff’s motion to amend Ms complaint is granted, without prejudice to the defendants’ right to move as they may be advised in respect thereto. The plaintiff is also granted leave to join Edward Egan as a party defendant. The amended complaint and supplemental summons shall be served witMn 20 days from the date of service of a copy of the order to be submitted on the plaintiff’s attorney.
The motion to dismiss the fourth and fifth causes of action is granted.