Murray H. Pearlman, J.
This motion came on to be heard before me on December 7,1962 at which time defendant’s attorney requested time to submit his opposing affidavit. Said request was granted and the defendant was given until December 21, 1962 to submit his papers in opposition.
This action was commenced to recover the sum of $5,670.66 for goods manufactured, sold and delivered to the defendant pursuant to written orders therefor, between July 20, 1961 and December 1, 1961, including trucking charges, and upon an account stated.
The first cause of action alleged in the verified complaint is pleaded in compliance with the provisions of section 255-a of the Civil Practice Act. Annexed to the complaint is a schedule itemizing and describing each of the items sued for, the agreed price thereof and the dates of delivery of each. Defendant’s answer fails to comply with the provisions of the aforesaid section 255-a of the Civil Practice Act and thus leaves no issue with respect to the allegations of the first cause of action. *370 (Simmons Co. v. Well Diggers, 206 Misc. 874; Spiegel, Inc. v. Fashion Play Togs, 83 N. Y. S. 2d 762; Bertolf Bros. v. Leuthardt, 261 App. Div. 981; International Milk Co. v. Cohen, 219 App. Div. 308; Sinram Bros. v. Naples Realty Co., 224 App. Div. 369.)
Moreover, in defendant’s examination before trial, quoted verbatim in the moving affidavit, defendant’s officer, expressly conceded by stipulation on the record that defendant received the described items sued for and that it has not paid the agreed prices therefor, including the trucking charges. Additionally, defendant’s affidavit expressly admits plaintiff’s first cause of action saying: “ Defendant intentionally does not deny delivery, reasonable value or agreed price ”.
It appears affirmatively that no issues of fact exist as to plaintiff’s first cause of action, and that it is thus entitled to summary judgment thereon, despite defendant’s interposition of a counterclaim, the subject matter of which will be discussed, ante. (Nopco Chem. Co. v. Milner, 12 A D 2d 942; Smith v. Cranleigh, Inc., 224 App. Div. 376; Gallagher Switchboard Corp. v. Heckler Elec. Co., 34 Misc 2d 256.)
As to plaintiff’s second cause of action on an account stated, the answer merely denies the same upon information and belief. The answering affidavit repeats that form of denial and fails to factually show that the defendant did not receive, retain and thus accept the statements of account mailed to the defendant, as sworn to in the verified complaint and moving affidavit.
On his examination before trial, defendant’s officer, when asked whether defendant had received plaintiff’s statements of December 31, 1961 and of January 31, 1962, replied that he did not know. Certainly, since the examination before trial, defendant has had ample opportunity to ascertain whether it received, retained and thus accepted plaintiff’s statements of account as rendered. The unsupported denial, upon information and belief, is insufficient to raise any issue of fact on plaintiff’s second cause of action. (New York Tel. Co. v. Ladenheim Fixtures Corp., 14 Misc 2d 939.)
Before proceeding to a discussion of the alleged defense and counterclaim interposed by the defendant, it may be well to restate the principle that the mere assertion of a counterclaim unsupported by evidentiary proof that it is factually and legally sustainable at trial does not bar relief to a plaintiff under rule 113 of the Buies of Civil Practice (Nopco Chem. Co. v. Milner, supra; Smith v. Cranleigh, Inc., supra and cases therein cited; Gallagher Switchboard Corp. v. Heckler Elec. Co., supra; Kleinman v. B. & M. Cleaners, 37 Misc 2d 117).
*371 The rule has always been that to defeat a motion for summary judgment, evidentiary facts, not surmise, conjecture, arguments, hearsay or suspicion, must be shown (Shapiro v. Health Ins. Plan of Greater N. Y., 7NY 2d 56, 63). “ The very object of a motion * * * is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial ” (Richard v. Credit Suisse, 242 N. Y. 346, 350). The proof offered by affidavit or otherwise must disclose the presence of a genuine triable issue rather than a formal, feigned, perfunctory or shadowy one (Schillinger v. North Hills Realty Corp., 15 A D 2d 539, 540). The remedy would serve no useful purpose if frivolous and transparently insufficient proof were held to create a triable issue (Hanrog Distr. Corp. v. Hanioti, 10 Misc 2d 659).
The onus is on the party resisting the motion to assemble, lay bare and reveal Ms proof to show that his claim is real and capable of being established at trial (Di Sabato v. Soffes, 9 A D 2d 297, 301). In the absence of an apparent genuine and substantial issue of fact, the court may and should dispose of the matter upon the law and direct judgment accordingly (Ball v. United Artists Corp., 13 A D 2d 133, 135-136; see, also, Irving Weis and Co. v. Offenberger, 31 Misc 2d 628).
Defendant’s first defense — not by way of counterclaim — alleges untimely delivery of certain parts to be used by defendant in the manufacture and sale of certain skillets. In the absence of plea and proof of damages occasioned by said untimely delay, the pleaded delay does not constitute a bar to plaintiff’s recovery. Moreover, the unquestioned acceptance of late deliveries and payment for them, which is the case here, constitutes full performance of plaintiff’s obligation. “From acceptance without complaint, from payment for the goods in full without objection, the inference of fact may, at times, arise that there was an implied agreement that the belated delivery should be accepted by the buyer as full satisfaction of the seller’s obligation. Failure to give notice of claim of breach is, even without the statute, cogent proof of such an understanding and agreement.” (Atwater & Co. v. Panama R. R. Co., 255 N. Y. 496, 502.) (See, also, Robinson Clay Prods. Co. of N. Y. v. Thatcher & Sons, 150 N. Y. S. 658; Kraut v. Nordlinger, 216 App. Div. 409.)
Defendant’s letter of December 16, 1960 attached to the answering affidavit, refers to delay in delivery of “production samples ’ ’ and not to the manufactured covers and pans which it later accepted and paid for without complaint as to untimeliness.
*372 The written orders between the parties for the manufacture of the dies, skillets and covers provided in part as follows:
commercial stamping: The only warranty which the seller makes in connection with the material furnished buyer under the terms of the buyers order is that material used shall be of a good quality and that all stamping shall conform to the commercial standard generally employed in the metal stamping trade.
# # #
claims: Written claims for shortages must be made within one week from receipt of the goods. If any material furnished by Seller proves defective, or not as ordered, he must be notified in writing within one week from receipt of shipment and Seller shall have the option of inspecting the goods on Buyer’s premises or of taking back the goods and deciding whether he shall replace them or not. Under no circumstances will Seller allow or be liable for damages or any claim for expense in using Seller’s product.
* * *
dies & tools : Since all prices for tooling represent only the actual labor costs to the Seller, the tools, while Buyer’s property, remain in the Seller’s possession, but will be surrendered at an additional cost of 25% to cover overhead. Tools will be kept in repair and renewed at Seller’s expense; but Seller accepts no responsibility for the operation of these dies when used in any other plant than Seller’s or after they have been once removed. Dies not used for two years may be scrapped without notice, unless otherwise specifically agreed in writing. Seller is expressly granted a lien on all of the Buyer’s metals, goods and raw materials in the Seller’s possession, and Seller may retain the same as security until the full payment by the Buyer of all the charges to the Buyer for labor or services theretofore performed by Seller for the Buyer. (Emphasis supplied.)
The existence and defendant’s knowledge of the foregoing terms and conditions are not denied by it.
Admittedly, plaintiff produced for defendant some 16,000 covers and pans from the dies manufactured by plaintiff for defendant over a period of time commencing January, 1961 to December, 1961, all of which were received and sold by defendant to its customers. Without denial, it had paid the plaintiff some $20,000 therefor.
On November 13, 1961, defendant wrote to the plaintiff advising it that on or before January 25, 1962, it would pay plaintiff the ‘ ‘ unamortized balance ’ ’ due on the dies, saying “It is understood that this tooling and dies become our property, not to be used by anyone else but you, and are to be turned over to us immediately upon demand.”
On December 4,1961, defendant paid plaintiff $5,807.99 in full payment of the unamortized balance of the tools and dies. There is no denial that the defendant prior to December 4, 1961 had caused the dies to be inspected by its representative at plaintiff’s premises. This was before its receipt, acceptance and payment for them on December 4, 1961. Significantly, no affidavit of the defendant’s agent who inspected them is submitted on this motion.
*373 Despite the fact that plaintiff’s contract with defendant provided for written claims to be made within one week ‘ ‘ if any material furnished by Seller proves defective, or not as ordered,” admittedly no such written notice was given to plaintiff, in the absence of which defendant may not recover on its counterclaim. (Kahn Co. v. Knickerbocker Underwear Co., 81 N. Y. S. 2d 541; M. Fink, Inc. v. Leventhal, 38 N. Y. S. 2d 815; Muehlstein & Co. v. Airway Cleaners & Dyers, 17 Misc 2d 941; Baruch v. D. G. Dery, Inc., 188 N. Y. S. 453.)
In the last-cited case, which involved a requirement of 10 days’ notice, we find the following language appropriate to the case at bar (pp. 454-455): “ And it was competent for the parties by their contracts to define their rights and obligations independent of the statute, by fixing a definite period within which the vendee seeking allowance or damages should notify the vendor of defects in the merchandise. The rule referred to accomplishes that object, at least where the defects are apparent on inspection, as they evidently were in this case ”.
Though defendant had had the dies inspected and though defendant admits knowledge of a claimed prior defect in the dies, no such claim was asserted by its letters referred to above nor by any writing thereafter, within the stipulated claim period, in compliance with the terms of the contract between the parties. Throughout the period of 1961 it continued to pay for the amortization of the dies and for covers and pans and finally by its check of December 4, 1961, the full balance of the unamortized cost of the dies.
Included in defendant’s counterclaim is a claim for anticipated profits resulting from the delivery of proper dies and from the sale of completed skillets.
The contract between the parties provides that under no circumstances would the seller be liable for damages or any claim or expense in using the seller’s product, and further “ accepts no responsibility for the operation of these dies when used in any other plant than Seller’s or after they have been once removed.”
Only in the plainest of cases is recovery permitted for expected profits. (Moran v. Standard Oil Co., 211 N. Y. 187,195; 3 Williston, Sales [Rev. ed.], § 614; Freier v. Shayani, 16 Misc 2d 31, 39; Tracton v. A & O Novelties Co., 32 Misc 2d 991.)
In a similar instance, the Special Term in the Tracton case (supra) granted summary judgment, striking out a similar counterclaim, saying (p. 992): “The additional counterclaim set up in the amended answer presents no triable issue of fact. Subdivision 7 of section 150 of the Personal Property Law pro *374 vides that in case of a breach of warranty of quality, the recoverable damage, ‘ in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty ’. Loss of profits is not ordinarily recoverable on a claim of breach of warranty (Andersen Trading Co. v. Brody, 205 App. Div. 47; Matter of Gotham Silver Co., 91 F. Supp. 520, 526 ; Log Cabin Rest v. Alpine Wine & Liq. Corp., 110 N. Y. S. 734). Knowledge that the articles were purchased for resale is not sufficient to take this case out of the general rule. [I]t must be made to appear that such [damages for loss of profits] were within the contemplation of the parties at the time of the making of the contract. ’ (Andersen Trading Co., supra, p. 48.) ”
Finally, Ciofalo v. Vic Tanney Gyms (10 N Y 2d 294) appears to be a complete bar to the defendant’s counterclaim under the contract provisions of this case, above referred to. In upholding an exculpatory clause, the Court of Appeals in affirming a summary judgment dismissing plaintiff’s complaint held (pp. 296-297):
" Although exculpatory clauses in a contract, intended to insulate one of the parties from liability resulting from his own negligence, are closely scrutinized, they are enforced, but with a number of qualifications. Whether or not such provisions, when properly expressed, will be given effect depends upon the legal relationship between the contracting parties and the interest of the public therein. Thus such a provision has been held void when contained in the contract of carriage of a common carrier (Conklin v. Canadian-Colonial Airways, 266 N. Y. 244) unless a reduced fare was charged (Anderson v. Erie R. R. Co., 223 N. Y. 277); or in the contract of a public utility under a duty to furnish telephone service (Emery v. Rochester Tel. Corp., 156 Misc. 562, affd. 246 App. Div. 787); or when imposed by the employer as a condition of employment (Johnston v. Fargo, 184 N. Y. 379).
“ On the other hand, where the intention of the parties is expressed in sufficiently clear and unequivocal language (Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36, 41), and it does not come within any of the aforesaid categories where the public interest is directly involved, a provision absolving a party from his own negligent acts will be given effect. This was the situation in Kirshenbaum v. General Outdoor Adv. Co. (258 N. Y. 489), a landlord and tenant relationship; in Graves v. Davis (235 N. Y. 315), involving a contract for towage by the owners of a tug; and in the so-called contractor cases (Turner Constr. *375 Co. v. Rockwood Sprinkler Co., 249 App. Div. 508, affd. 275 N. Y. 635; Long Is. R. R. Co. v. American Bridge Co., 175 App. Div. 170, affd. 225 N. Y. 692). In situations such as these, ‘ public policy does not condemn the immunity clause voluntarily agreed upon by these parties ’ (Kirshenbaum v. General Outdoor Adv. Co., supra, p. 495).”
Accordingly judgment is granted in favor of the plaintiff striking out the answer of the defendant.