CARMEN WOJTOWICZ, Individually and as Mother and Natural Guardian of DAWN M. WOJTOWICZ and Another, Infants, Respondents, v DELACORTE PRESS et al., Appellants, et al., Defendants.

First Department, June 9, 1977

*Eugene L. Girden* of counsel *(Carleton G. Eldridge, Jr., Pamela G. Ostrager* and *Joseph D. Karp* with him on brief; *Coudert Brothers,* attorneys), for Warner Bros., Inc. and another, appellants.

*Roger Bryant Hunting* of counsel *(Jeremy Nussbaum, Nathan Z. Dershowitz* and *Richard Paul Richman* with him on the brief; *Greenbaum, Wolff & Ernst,* attorneys), for Delacorte Press and another, appellants.

*William G. O'Donnell (Stuart F. Gartner* with him on the brief), attorney for Carmen Wojtowicz, individually and as natural guardian, respondents.

*Irwin Karp* for the Authors League of America, Inc., *amicus curiae.*

CAPOZZOLI, J. Defendants seek dismissal of the first, second, fifth, sixth, ninth and tenth causes of action in the complaint herein.

We are faced with the question of whether, on the uncontroverted facts in this record, plaintiffs have any cause of action for invasion of their right to privacy under sections 50 and 51

of the New York Civil Rights Law. We conclude that they do not.

This action had its genesis in the bizarre events which took place at a Brooklyn bank on August 22, 1972. On that date John Wojtowicz and Sal Naturile attempted, unsuccessfully, to rob a branch of the Chase Manhattan Bank. They became trapped in the bank with eight hostages when the bank was surrounded by the police. The events which unfolded for the next several hours were the subject of live television coverage.

Plaintiffs are the wife and infant children of Wojtowicz. During the long hours while the two men attempted to negotiate for their release, Wojtowicz at one point expressed a desire to see his wife, the plaintiff, Carmen Wojtowicz, who did not come to the bank. But his other "wife", a male tranvestite, was brought to the scene of the crime and the whole relationship was captured by the television cameras. The events came to a conclusion when, after being transported by bus to Kennedy Airport, Naturile was shot and killed by an FBI agent and Wojtowicz was apprehended. He is now serving a long prison term.

The entire episode received considerable notoriety and in its September 22, 1972 edition, *Life Magazine* presented a detailed account of the entire affair, including aspects of Wojtowicz' personal life and his relationship with his wife. That article used the parties' true names and actual pictures, including one of plaintiff, Carmen Wojtowicz. Mention was also made of their two children—the infant plaintiffs.

Subsequently defendant, Warner Bros. Inc., and Artists Entertainment Complex, Inc., produced and distributed the motion picture, "Dog Day Afternoon", which in its opening scene announced to the viewers that the story was true and that it occurred in Brooklyn on August 22, 1972. The screen credits indicated that it was based on a story found in the September 22, 1972 issue of *Life Magazine.* The movie does not use the true names of the plaintiffs or of the robbers. The wife and two children, in the movie, are named Angie and Kimmy and Jimmy respectively. The wife was but a minor character in the movie and the children were mentioned only incidentally. It does not appear that actual pictures of any of the plaintiffs were used in promoting the film.

In the movie the wife is depicted as a rather loquacious and unpleasant person and it could be implied from the movie that she was, at least in part, the cause of her husband's problems.

Following release of the film, defendants, Delacorte Press and Dell Publishing Co. Inc., published hard and soft-covered books based on the screenplay. They, too, depicted, in part, the central character's personal life, including descriptions of his wife which were similar to those in the movie. Neither illustrations, nor true names are used in the books.

Plaintiffs' names, portraits or pictures not having been used in either the movie or the books, no cause of action based on sections 50 and 51 of the Civil Rights Law is stated—and it matters not that it may be clear that the plaintiffs were actually being depicted therein or that the movie and books described the story as true.

Special Term, in a carefully considered opinion, indicated a belief that actions for invasion of privacy exist "irrespective of the limiting provisions of the Civil Rights Law". While this may be true in other jurisdictions, it is clearly established that it is not so in New York. "In this State, the right of privacy or the right of a person to live his life quietly and to be left alone rests solely in and is limited by statute *(Roberson v. Rochester Folding Box Co.,* 171 N. Y. 538; Civil Rights Law, §§ 50, 51)" *(Flores v Mosler Safe Co.,* 7 NY2d 276, 280). Since the right of privacy in this State is statutory it is more restricted than that right in States where it is recognized without legislation. *(Manger v Kree Inst. of Electrolysis,* 233 F2d 5, 8, n 3-a.)

In *Waters v Moore* (70 Misc 2d 372, 376-377) then Justice WACHTLER said: "the court is unaware of any case in this State which sustained a cause of action under the statute where the plaintiff's 'name, portrait or picture' was not employed [citing cases]. The conclusion is thus inevitable that valid causes of action for invasion of privacy are not stated".

Plaintiffs' causes of action must fail because the motion picture and books do not utilize the name, portrait or picture of any plaintiff and such is "the statutory test of identification *(Toscani v. Hersey,* 271 App. Div. 445, 448)". *(University of Notre Dame v Twentieth Century-Fox Film Corp.,* 22 AD2d 452, 455, affd 15 NY2d 940.)

In *Toscani v Hersey (supra,* p 448) this court held that section 51 "was not intended to give a living person a cause of action for damages based on the mere portrayal of acts and events concerning a person designated fictitiously in a novel or play merely because the actual experiences of the living person had been similar to the acts and the events so nar-

rated. To so construe the statute would broaden its scope far beyond anything warranted by the meaning that would ordinarily be ascribed to the words 'name, portrait or picture'."

It being undisputed that the true names or pictures of the plaintiffs are not used in the books or movie, "this fact renders any possible claim for invasion of privacy under § 51 fatally defective. It is the plaintiffs who have identified themselves to the public, not the defendants." *(Meeropol v Nizer,* 381 F Supp 29, 38.)

The order, to the extent appealed from, should be reversed, on the law and the above-enumerated causes of action dismissed, without costs.

KUPFERMAN, J. P., BIRNS, EVANS and YESAWICH, JJ., concur.

Order, Supreme Court, New York County, entered on September 13, 1976, so far as appealed from, unanimously reversed, on the law, the first, second, fifth and sixth causes of action of the complaint dismissed and severed as to defendants-appellants Delacorte Press and Dell Publishing Co., Inc., and the ninth and tenth causes of action of the complaint dismissed and severed as to defendants-appellants Delacorte Press, Dell Publishing Co., Inc., Warner Bros., Inc., and Artists Entertainment Complex, Inc., without costs and without disbursements.