Susan Cohen et al., Appellants, v Herbal Concepts, Inc., Defendant, and The Hearst Corporation et al., Respondents.

First Department, March 8, 1984

### APPEARANCES OF COUNSEL

*Gair, Gair & Conason, P. C.* (*Herman Schmertz* of counsel), for appellants.

*Lola Sullivan Reynolds, Richard H. Sugarman* and *Thomas A. Bisdale* for The Hearst Corporation, respondent.

*Sabin, Bermant & Blau* (*Ralph P. Huber* and *Nancy K. Nadler* of counsel), for The Conde Nast Publications, Inc., respondent.

### OPINION OF THE COURT

Order, Supreme Court, New York County (Alvin Klein, J.), entered on June 24, 1982, unanimously reversed, on the law, without costs and without disbursements, the motion denied and the first and second causes of action reinstated.

Kassal, J. (concurring). Plaintiffs appeal from an order which granted the motions by defendants, The Hearst Corporation (Hearst), The Conde Nast Publications, Inc. (Conde Nast), and James Krieger (Krieger), for summary judgment dismissing the first and second causes of action alleging an invasion of plaintiffs' right to privacy under sections 50 and 51 of the New York Civil Rights Law.

The issue is whether the photograph, concededly published in magazines for advertising purposes, amounts to a

portrait or picture of the plaintiffs within the contemplation of the statute and whether the identity of plaintiffs, as the subject of the photograph, poses a factual issue to await the trier of the facts. Special Term concluded, as a matter of law, that the identity of the plaintiffs could not be determined from the picture and dismissed the complaint. To the contrary, the identification of the plaintiffs is a factual issue, susceptible to proof at trial and inappropriate for summary disposition on the fact-finding analysis engaged in by Special Term.

On the weekend of July 4, 1977, plaintiffs were visiting their friends, Mr. and Mrs. Henderson, at the Henderson home in Woodstock, New York. During the weekend, Susan Cohen and her child, Samantha, were bathing in the nude in a stream located on private property, when Ira Cohen observed Krieger taking photographs of his wife and daughter as they entered the water. While Krieger denies having taken any photographs, Cohen claims that Krieger admitted that he had taken them and that he had a right to do so. Some time later, while flipping through a magazine, Mr. Cohen recognized his wife and daughter in a photograph which appeared as part of an advertisement for Au Naturel, a product used to fight cellulite, manufactured by Herbal Concepts. The photograph appeared in advertisements in three magazines, *House Beautiful* and *Cosmopolitan,* published by Hearst, and *House & Garden,* published by Conde Nast. The photograph depicts two nude persons, a woman carrying a small object in her left hand, leading a young girl by the right hand through shallow water. Although the faces of neither are visible, the rear and side of the subjects can be seen. The mother appears lean, with a long, thin neck and distinctive short, free-flowing hair. Her waist and arms are slender and her right breast is visible, as is the area of the buttocks, with what appear to be two dimples appearing above. The advertisement reproduces the photograph next to the advertising copy, which describes the product and is addressed to women with "fatty lumps and bumps that won't go away".

The action as originally commenced contained six causes of action, the first two to recover under the Civil Rights Law and the third through sixth sounding in defamation.

On a prior motion, Special Term concluded that the photograph was not defamatory per se and dismissed the last four causes of action since special damages had not been alleged. In his opinion, the Justice at Special Term expressed the view that, from the picture, it was impossible to identify either person since no faces were visible.

Following that determination, defendants moved for summary judgment dismissing the first two causes, relying upon the prior opinion and claiming that, as a matter of law, the advertisement did not portray a clear representation of the plaintiffs. In essence, it was argued that since their faces were not depicted, it was impossible to identify them. Krieger also denied having taken, sold or published the photograph. His attorney, contending that plaintiffs could not be identified, relied upon the position of Special Term on the prior motion as dispositive on the legal insufficiency of the remaining causes of action. In opposition, Mr. Cohen stated that he had recognized his wife and daughter from the photograph and that several friends had also recognized them.

Special Term dismissed the complaint, concluding "that the identities of the plaintiffs cannot be determined from the picture." That determination, however, is essentially a factual one and cannot be made upon motion for summary judgment, where the judicial function is limited to issue finding, not issue determination (*Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404; *Esteve v Abad,* 271 App Div 725, 727). As has been recognized, summary judgment is a drastic remedy and should not be granted where there is any doubt of the existence of a triable issue (*Moskowitz v Garlock,* 23 AD2d 943, 944) or where the issue is even arguable (*Barrett v Jacobs,* 255 NY 520, 522).

Section 51 of the Civil Rights Law makes actionable the use within the State for advertising or trade purposes of the "name, portrait or picture" of "[a]ny person", without securing the consent of such person. This statutory right of privacy is limited in the sense that it is a legislative creation, no right of privacy having been recognized in this State until the enactment of sections 50 and 51 of the Civil Rights Law (L 1903, ch 132, §§ 1, 2) (see *Roberson v Rochester Folding Box Co.,* 171 NY 538). In *Roberson,* the

Court of Appeals found legally insufficient a prayer for injunctive relief and monetary damages for the unauthorized distribution of plaintiff's photograph in an advertisement for defendant's flour, the majority concluding that any protection to be accorded was a matter for legislative enactment and could not be effected by judicial pronouncement. That decision, it has been observed, resulted in the enactment of sections 50 and 51 of the Civil Rights Law at the next session of the Legislature (see *Flores v Mosler Safe Co.,* 7 NY2d 276, 280).

The remedial nature of the statute affords protection against the commercial exploitation of one's "name, portrait or picture" and furnishes a remedy for the injury to a person's feelings and sentiments. Thus, in *Flores v Mosler Safe Co. (supra,* pp 280-281), the Court of Appeals observed: "The primary purpose of this legislation was to protect the sentiments, thoughts and feelings of an individual (Hofstadter, The Development of the Right to Privacy in New York [1954], p. 12). In construing the statutes it should be noted that although it is in part penal * * * the purpose of the statute is remedial and rooted in popular resentment at the refusal of the courts to grant recognition to the newly expounded right of an individual to be immune from commercial exploitation (*Lahiri* v. *Daily Mirror,* 162 Misc. 776, 779). Justice SHIENTAG, in his opinion in the *Lahiri* case, in establishing a guide in the construction of these sections has said that 'A statute of this kind is not "to be obeyed grudgingly, by construing it narrowly and treating it as though it did not exist for any purpose other than that embraced within the strict construction of its words." It is "not an alien intruder in the house of the common law, but a guest to be welcomed * * * as a new and powerful aid in the accomplishment of its appointed task of accommodating the law to social needs." ' (*Lahiri* v. *Daily Mirror, supra,* p. 779.)"

While the statutory scope is restricted in the sense that it only affords protection against the commercial exploitation of one's "name, portrait or picture", the section has been liberally construed (see *Flores v Mosler Safe Co., supra; Lahiri v Daily Mirror, supra; Brinkley v Casablancas,* 80 AD2d 428, 432). In *Brinkley,* Justice SULLIVAN, in a

scholarly and exhaustive analysis of the history and scope of the statute, similarly concluded that the underlying purpose was to protect against "the wrongful exploitation of his or her name or likeness," observing (80 AD2d, at p 440): "The wrong consists of only two elements: the commercial use of a person's name or photograph and the failure to procure the person's written consent for such use. The damages that flow from the confluence of these two events should be compensable whether the injury is to one's feelings or to his 'propriety' interest."

Contrary to the construction adopted at Special Term and urged by defendants on this appeal, the statutory phrase "portrait or picture" does not require that there be an identifiable facial representation as a prerequisite to relief. The legislative scope affords far greater protection than that accorded by Special Term. The thrust of the statute extends to any commercial exploitation of one's "likeness", which includes any representation of the person. (*Binns v Vitagraph Co.,* 210 NY 51, 57; *Brinkley v Casablancas,* 80 AD2d, at p 440; *Young v Greneker Studios,* 175 Misc 1027, 1028.) Thus, almost 70 years ago, in *Binns v Vitagraph Co.* (210 NY, at p 57), our Court of Appeals observed: "A picture within the meaning of the statute is not necessarily a photograph of the living person, but includes any representation of such person. The picture represented by the defendant to be a true picture of the plaintiff and exhibited to the public as such, was intended to be, and it was, a representation of the plaintiff. *The defendant is in no position to say that the picture does not represent the plaintiff* or that it was an actual picture of a person made up to look like and impersonate the plaintiff." (Emphasis added.)

Similarly, in *Young v Greneker Studios (supra)*, the court held that the statutory proscription, extending to any "portrait or picture", was "broad enough to include *any representation,* whether by photograph, painting or sculpture." (175 Misc, at p 1028; emphasis added.)

Although the statute does not expressly impose as a requirement that plaintiff be identifiable, in *Negri v Schering Corp.* (333 F Supp 101, 103), the court considered it relevant whether the commercial exploitation contains

"a recognizable likeness of the plaintiff." To the extent that there is such a requirement, the issue is susceptible to proof at trial. *Negri* does not hold to the contrary, since in that case, the court granted summary judgment to the plaintiff, finding, as a matter of law, that "[a]nyone familiar with her appearance at the time the photograph was taken would have no difficulty recognizing her" (333 F Supp, at p 105). Here, the issue posed is different and where a legitimate issue of identification has been raised, susceptible to proof at trial, it should not be summarily resolved.

In *Feeney v Young* (191 App Div 501), plaintiff sought to recover under sections 50 and 51 of the Civil Rights Law for the exhibition of a motion picture of her giving birth by a Caesarean section operation, notwithstanding her consent to its use for medical societies. The action was commenced against her physician when the motion picture was exhibited publicly in two theaters as part of a film entitled Birth. Judgment was entered in favor of defendant upon the dismissal at the close of the plaintiff's case. We reversed and remanded the matter for a new trial, holding that the trial court had erred in refusing to receive the testimony of the plaintiff, her husband and another witness who had seen the film, finding that such eyewitness testimony was probative on the issue "that the picture as presented upon the screen was capable of identification as her picture." (191 App Div, at p 503.) Likewise, in our case, plaintiffs should not be precluded from establishing at trial that the photograph represented them and that they were therein recognizable. This factual determination cannot be summarily made by the court, which lacks any familiarity with the likeness or physical attributes of the plaintiffs.

Similarly, in *Loftus v Greenwich Lithographing Co.* (192 App Div 251), plaintiff, an actress, sought to enjoin defendants from using her portrait or picture for advertising purposes. We reversed the judgment for defendant after trial and held that the statute applied, albeit there, defendant did not use an exact reproduction of the plaintiff's portrait. The artist, in drawing the picture on the poster, had made slight changes in the pose but essentially copied plaintiff's features and, accordingly, we concluded that the

case fell within the protective scope of the statute: "If the wholesome provisions of the Civil Rights Law, upon which this action is based, can be thwarted by using a portrait or picture without consent, provided some slight change in the pose is made by enlargement of the picture or otherwise, then the statute will be of little use and the purpose for which it was enacted will be defeated." (192 App Div, at p 256.)

So, too, in this case, where plaintiffs claim that they were the subject of the photograph in the advertisements, concededly for commercial purposes. The conclusory claim offered by defendants, that, in their view, "it is virtually impossible to determine the identities of either person depicted in the photograph" is insufficient to determine the issue as a matter of law. That view, adopted by Special Term, conflicts with the admonition by the Court of Appeals in *Binns v Vitagraph Co.* (210 NY, at p 57), that "defendant is in no position to say that the picture does not represent the plaintiff".

It is significant that the record is barren of any proof that the photograph was not the plaintiffs. While the record does include a letter from the attorney for Herbal Concepts to plaintiffs' attorneys that "we have what we consider to be definite proof that the people pictured in the photograph are not your clients; that the photograph was taken by Mr. Audley of some friends of his whose names are not Susan and Samantha Cohen", no such proof was offered on the motion. Defendants relied exclusively upon Krieger's denial that he had taken the photograph and Special Term's conclusion of fact that it was impossible to ascertain the identity of either person, since the face of neither was visible. The statute, however, is not so limited in scope and extends beyond mere facial reproduction.

Moreover, the opposing papers are sufficient to raise in issue the identity of the plaintiffs as the persons in the photograph, Mr. Cohen stating that he noticed the photograph upon flipping through a magazine, whereupon he immediately recognized his wife and daughter. He also stated that several friends had recognized them. While the identities of the friends were not revealed, the defendants could readily obtain their names through disclosure proceedings.

In any event, Mr. Cohen's statement is competent and does have probative value since he is clearly a person with knowledge of the facts (CPLR 3212, subd [b]). The fact that he is an interested party only bears upon his credibility and does not affect the probative weight of his affidavit. Nor is it relevant that he was present at the time the photograph was taken. While defendants claim that his ability to recognize his wife and daughter resulted from his having witnessed the incident, that argument again bears upon credibility, not an issue to be resolved summarily (see *Wickham v Liberty Mut. Ins. Co.*, 73 AD2d 742, 743; *Matter of Sabatino,* 59 AD2d 992). Our courts have repeatedly recognized that proof which might be inadmissible at trial may nevertheless be considered in opposition to a motion for summary judgment (*Phillips v Kantor & Co.*, 31 NY2d 307; *Wertheimer v New York Prop. Ins. Underwriting Assn.,* 85 AD2d 540).

The central issue is whether plaintiffs can establish, sufficiently to satisfy the trier of the facts, that the photograph represents their "portrait or picture", within the terms of the statute. The statutory right applies to all persons, private individuals as well as public figures. The construction adopted at Special Term, however, is unduly restrictive and would improperly and unwisely limit the remedy to known personalities, with widely recognizable physical characteristics. The statute was never intended to be so narrow in its application. The legislative protection is clear, extending to "any person" within the general public, not merely to those with a publicly identifiable feature, such as Groucho Marx' moustache, Bob Hope's nose, Eddie Cantor's eyes or Dolly Parton's hairstyle. The disposition in each case is necessarily dependent upon the individual facts and circumstances. On this record, the question cannot be summarily disposed of.

We disagree with the concurrence by Justice ASCH, who would sustain the complaint on a novel theory which has not been advocated by any of the parties. The first cause of action predicates liability solely upon the alleged breach of sections 50 and 51 of the Civil Rights Law, as is alleged in the FORTY-SEVENTH paragraph of the complaint. This was the position taken before Special Term and is the stance by

all parties on this appeal. Plaintiffs have not sought to proceed on a quasi contract theory of "unjust enrichment", as has been extracted by Justice Asch in reliance upon one "throw-in" allegation in a 48-paragraph first cause of action. Clearly, the gravamen of the cause of action is invasion of privacy, which right is limited in this State to the statutory protection afforded by the Civil Rights Law. However, where there is no statutory violation, the use or publication cannot be found to be unauthorized and, in such a case, there can be no unjust enrichment. To hold otherwise is to legislate.

Further, we need not concern ourselves with the contention by Conde Nast, both at Special Term and on this appeal, that the imposition of liability would pose an insurmountable burden upon a publisher, who is unable to verify that consent had been secured for the thousands of advertisements each year, most of which are illustrated by photographs. Such objection should more appropriately be directed to the Legislature, since the statute extends to any unauthorized use of one's name, portrait or picture for advertising or trade purposes. Ensuring the necessary consent is an incident of defendants' business, from which they undoubtedly derive substantial revenue. In view of the legislative purpose to prevent commercial exploitation of a person's name, portrait or picture, this objective would be thwarted were publishers to be absolved solely by reason of the large volume of published advertisements.

*Wojtowicz v Delacorte Press* (43 NY2d 858, affg 58 AD2d 45), and *Toscani v Hersey* (271 App Div 445), relied upon by defendants, are distinguishable. In both cases, plaintiffs' names, portraits or pictures were not published. Liability in each case was sought to be predicated upon a fictionalized account which the plaintiffs claimed portrayed them. In *Toscani,* it was alleged that the play, A Bell for Adano, involving a fictitious figure, Major Victor Joppolo, actually portrayed the plaintiff, the senior civil affairs officer of Licata, Sicily, during the Allied occupation in World War II. Considering the background of the statute, we there held section 51 of the Civil Rights Law inapplicable, albeit the actual experiences of the plaintiff were similar to the dramatized events.

Similarly, in *Wojtowicz v Delacorte Press* (*supra*), plaintiffs sought to proceed under section 51 of the Civil Rights Law as a result of the publication of the motion picture Dog Day Afternoon, based upon an account of an unsuccessful attempt to rob a branch of the Chase Manhattan Bank. During the attempted robbery, the robbers and eight hostages had been trapped in the bank for hours. Plaintiffs were the wife and children of John Wojtowicz, one of the persons who had attempted to rob the bank. The movie did not use the true names of the plaintiffs, nor their actual pictures. Accordingly, the Court of Appeals, affirming our determination, held plaintiffs had no cause of action under sections 50 and 51 of the Civil Rights Law, since their names, portraits or pictures had not been used, albeit they were depicted in the film, which had described the story as true.

The holdings in both *Toscani* (*supra*) and *Wojtowicz* (*supra*) are premised upon the determination that section 51 of the Civil Rights Law affords no remedy where a publication contains only a fictionalized portrayal of acts or events, without the use of one's name, picture or portrait. On that same basis, *Allen v Gordon* (86 AD2d 514), is inapposite here. In that case, defendant's book portrayed a fictitious character, "Dr. Allen". The name had been selected at random, no first name was used, and the book contained no description of the person. We dismissed the cause of action for invasion of privacy under the Civil Rights Law, finding (p 515) that there was nothing in the book "which would prompt a rational reader to conclude that plaintiff was being described". Those cases, however, are far different from the facts in this case, where the plaintiffs seek to prove at trial that they are the persons in the photographs, that they were recognized and identified by others and that the use of defendants of their portrait or picture for advertising purposes was unauthorized. These are matter appropriate for trial.

ASCH, J. (concurring). I agree with the result reached by the majority but not with the route followed to reach that destination. I do not believe that the claim of the plaintiffs can be sustained under sections 50 and 51 of the Civil Rights Law. It is some 90 years after Samuel Warren and

Louis Brandeis urged that the privacy of citizens be protected from unauthorized intrusion (The Right to Privacy, 4 Harv L Rev 193). Since that time a miscellany of actions have been allowed authorizing claims for commercial misappropriation of one's name or likeness or the intrusion into an individual's privacy (see, e.g., Restatement, Torts 2d, §§ 652A-652E; Prosser, Torts [4th ed], ch 20, pp 802-818; Ann., 14 ALR2d 750).

Early in this century, concern for the right of privacy culminated in sections 50 and 51 of the Civil Rights Law in this State. However, aside from a few desultory amendments and decisions, the protection afforded under this section has not been extended. Its application has been rather closely confined to the literal language of the statute. To some extent this is because it has penal ramifications. The more probable reason for the requirement that the acts complained of must satisfy the explicit language of the statute is that when the competing interests of free speech and the need for the free dissemination of information collide with the individual's "right of privacy," the former interests most often prevail (see Zimmerman, Requiem for a Heavyweight: A Farewell to Warren and Brandeis's Privacy Tort, 68 Cornell L Rev 291).

Section 51 creates an action in favor of a "person whose name, portrait or picture is used within this state for advertising purposes". But neither Susan Cohen nor Samantha Cohen is recognizable from the photograph. It is a threshold requirement under a section 51 claim that "[t]he picture used must be a *clear* representation of the plaintiff, recognizable *from the advertisement itself."* (*Negri v Schering Corp.,* 333 F Supp 101, 103 [emphasis added].)

While conceding this requirement, plaintiffs argue, as they unsuccessfully did to the court below, that a question of fact concerning recognizability has been raised. This argument is contravened not only by plaintiffs' admission that their faces are not visible but also by their obvious inability to produce any viable evidence in support of their section 51 claim. Neither in their complaint nor in their affidavits in opposition to the summary judgment motion have plaintiffs ever specified what it is about the photograph that makes plaintiffs recognizable.

Clearly, nothing in the photograph itself approaches satisfying the requirement of "unequivocable identification", "recognizable likeness" or "clear representation" consistently set forth by the courts as a prerequisite to sustaining a section 51 claim (*People v Scribners Sons*, 205 Misc 818; *Negri v Schering Corp., supra; Levey v Warner Bros. Pictures*, 57 F Supp 40). This court has recently enunciated the rule that without this clear identification of plaintiff, the claims under section 51 must fail (*Allen v Gordon*, 86 AD2d 514). As the court held there at page 515: "The second cause of action for invasion of privacy under sections 50 and 51 of the Civil Rights Law fails because there is no *clear identification* of plaintiff in the portrayal of the character 'Dr. Allen' in the book which would prompt a rational reader to conclude that plaintiff was being described" (emphasis added).

The photograph in the Herbal Concepts advertisement is a rearview shot of two persons with no part of either of their faces visible. There are no outstanding or personal features shown in the photograph which would differentiate the subjects therein from millions of other people in this country. In sum, there is a total lack of *any* "features that are quite clear and characteristic" of the woman and child in the photograph.

Plaintiffs, to support their assertion of recognizability, have directed this court to the following alleged characteristics of the photograph in their brief: long and slender neck; two dimples above the buttocks; slim waist; bony elbows; indented backs; and short and freely flowing hair. The foregoing are the sum total of recognizable characteristics set forth by the plaintiffs. Even if all of such characteristics are, in fact, visible from the photograph, their nature actually negates plaintiffs' assertion of recognizability. Certainly, such characteristics are present in a large portion of the female population and can in no way be argued to be "distinguishing characteristics".

As was stated by Prosser, Torts (4th ed, § 117, p 806), "there is no liability for the publication of a picture of [plaintiff's] hand, leg or foot * * * with nothing to indicate whose they are." Likewise, indented backs, bony elbows and dimples above the buttocks, with a total lack of

uniqueness of such features, provide no indication whatsoever as to whose back, elbows or dimples they are.

The stated purpose of section 51 is to avoid the exploitation of identities either by name or picture. Plaintiffs' interpretation of the statute defeats the purposes espoused by the Legislature as well as the consistent applications given by the courts. Accordingly, plaintiffs' causes of action must fail because the photograph does not pass the "statutory test of identification" (*Toscani v Hersey,* 271 App Div 445, 448; *Wojtowicz v Delacorte Press,* 58 AD2d 45, 47, affd 43 NY2d 858; see, also, *Levey v Warner Bros. Pictures, supra*).

After a review of the photograph purported to depict plaintiffs, there was no doubt to Justice KLEIN in the court below, just as there was no doubt to Justice SHAINSWIT in deciding the earlier motion, that the photograph did not contain an actionably recognizable likeness of plaintiffs Susan Cohen and Samantha Cohen and plaintiffs have failed to raise any triable issue of fact as to their recognizability in the photograph.

Plaintiffs' only evidence, the self-serving statement of plaintiff Ira Cohen, is not probative on the issue of recognizability. Plaintiffs' argument that Susan Cohen and Samantha Cohen were in fact identifiable from the photograph is based entirely upon the affidavit of Ira Cohen, husband and father, respectively, of the alleged subjects of the photograph, as well as a plaintiff in his own right. As set forth in the affidavit of Ira Cohen, he was present and watching as the photograph was being taken by defendant Krieger. His affidavit is based, obviously, on knowledge gained as the result of being present when the photograph was being taken and, therefore, his affidavit is not probative on the issue of recognizability.

Closely analogous to the present case and wholly supportive of the foregoing proposition is *Branson v Fawcett Pubs.* (124 F Supp 429, cited by the court in *Negri v Schering Corp., supra*). In *Branson,* the court was faced with a summary judgment motion on behalf of a publication which had been sued in privacy by a race car driver for publishing, in connection with a fictional story, a photograph of a racing accident in which plaintiff was involved.

The court granted the defendant's motion and dismissed the case despite the fact that the plaintiff and several friends recognized the photograph as that of plaintiff. Emphasizing that such recognition was the result of independent knowledge, the court stated: "When considered by itself, [the photograph] in no way relates to or identifies any particular driver. It is *only through independent knowledge such as would result from being present* at the collision that it can be determined who the driver was. It is doubtful that this picture would have been recognizable even to the plaintiff or his friends had he or they not seen the newspaper photographs which appeared shortly after the collision, or seen the actual collision from the photographer's vantage point." (124 F Supp, at pp 432-433 [emphasis added].)

Likewise, due to his presence at the taking of the photograph, Ira Cohen's statement that he recognized plaintiffs from the photograph is insufficient to establish recognizability since it was founded "only through independent knowledge such as would result from being present" at the time the photograph was taken.

Other jurisdictions have incorporated this requirement of identifiability from the photograph alone into their interpretations of privacy statutes. As was stated in *Bernstein v National Broadcasting Co.* (129 F Supp 817, 833, affd 232 F2d 369), "[t]he gist of an action for invasion of privacy is a wrongful disclosure *by the defendant*. The identification of plaintiff * * * was not by act of the defendant, but by use of their own thought processes." As noted, plaintiffs in the present instance have based their entire case on the affidavit of Ira Cohen, a person who is not only the husband and father of plaintiffs and a plaintiff in his own right, but also was present at the time and place the photographs were allegedly taken. (See, also, *Rawls v Conde Nast Pubs.*, 446 F2d 313, cert den 404 US 1038 [invasion of privacy claim failed where identifiability as to plaintiff was not established].)

The conclusory statement proffered by Ira Cohen, containing hearsay declarations supposedly made by "several friends" who recognized plaintiffs in the photograph, cannot be employed to contradict the viewing of the photograph and the necessary conclusions drawn therefrom by

the lower court. This is particularly true where plaintiffs were unwilling or unable to present direct, sworn-to proof from such unnamed "friends" despite the passage of one full year between the commencement of the lawsuit and the filing of the summary judgment motion.

It is significant that these names are not furnished on this motion for summary judgment. Therefore, it may be assumed that they do not exist. "The onus is on the party resisting the motion to assemble, lay bare and reveal his proof to show that his claim is real and capable of being established at trial * * * In the absence of an apparent genuine and substantial issue of fact, the court may and should dispose of the matter upon the law and direct judgment accordingly" (*Belmet Prods. v Merit Enterprises,* 37 Misc 2d 368, 371; *Indig v Finkelstein,* 23 NY2d 728; *Di Sabato v Soffes,* 9 AD2d 297, 301).

As a matter of public policy, it does not seem appropriate that asserted recognition only by parties who have an interest in the outcome of the litigation should be deemed sufficient to justify success under section 51 of the Civil Rights Law. This would open the floodgates of litigation to anyone who fancied himself or herself as pictured in a mob scene used in an advertisement, even if what was depicted was simply an unrecognizable blob to anyone else. It may well be that "[t]he primary purpose of this legislation was to protect the sentiments, thoughts and feelings of an individual" (*Flores v Mosler Safe Co.,* 7 NY2d 276, 280). But this is quite different from saying that recognition is sufficient even if it is only based on the assertion of an interested party. Whether or not such person has a cause of action, it seems to me, must depend upon a recognition by someone *other* than the person who deems himself aggrieved.

It is clear that the majority is of the opinion that if the facts alleged in the complaint are established, then the plaintiffs were exploited. I certainly concur in these sentiments. However, redress cannot emanate from the statutory provisions of the Civil Rights Law. The doctrine of "equity of the statute" may find validation in Chinese statutory law as applied (The Developing Role of Law and Lawyers in China, 46 Albany L Rev 687) or in the Anglo-American jurisprudence of the sixteenth or seventeenth

centuries (Landis, Statutes and the Sources of the Law, Harvard Legal Essays [1934], pp 213, 215) but is not sanctioned by our contemporary judicial adherence to statutory authority. (See *Shields v Gross,* 58 NY2d 338.)

Fortunately, the principles of common law are flexible enough to furnish a remedy, even if the Civil Rights Law is not available, in the situation now under consideration.

Although the complaint is largely based upon a claim of breach of sections 50 and 51 of the Civil Rights Law, it also alleged: "FORTY-FIFTH: That the defendants were benefitted and unjustifiably enriched by the use of the aforesaid photograph."

It may be that on trial plaintiffs can establish a valid claim based upon "unjust enrichment".

If the defendants, without consent, used plaintiffs' photographs in an advertisement for which defendants received payment or other financial benefit, this might well establish a right in the plaintiffs for compensation. While the facts as alleged may not be sufficient to spell out a violation of the Civil Rights Law, it is entirely possible that the law can construct a quasi contract on the theory of "unjust enrichment" which may be the basis upon which plaintiffs can recover (see 22 NY Jur 2d, Contracts, § 466; cf. *Schumann v Loew's, Inc.,* 135 NYS2d 361).

Of course, if the trial should fail to establish that the backs which are depicted in the photographs are those of the plaintiffs, there can be no recovery under any theory. In any event, a trial is required to resolve this issue and to spell out whether or not this is a situation in which it would be improper to permit the defendant to retain what is sought to be recovered.

SILVERMAN, J. (concurring). I concur for reversal.

In defamation the gravamen of the action is the injury to the plaintiff's reputation in the eyes of others; thus whether others can identify plaintiff as the subject of the defamation is critical. But in an action for invasion of privacy under sections 50 and 51 of the Civil Rights Law, which this is, "[t]he primary purpose of this legislation was to protect the sentiments, thoughts and feelings of an individual." (*Flores v Mosler Safe Co.,* 7 NY2d 276, 280.)

Thus, the critical question as to identification in privacy cases is whether the individual whose "sentiments, thoughts and feelings" are to be protected can identify the subject. If the picture is indeed a picture of the plaintiff, then, for purposes of an action for invasion of privacy, it is sufficient identification if the plaintiff can identify it as a picture of herself.

KASSAL, J., and CARRO, J. P., concur in a memorandum by KASSAL, J.; ASCH, J., concurs in a separate memorandum; SILVERMAN and BLOOM, JJ., concur in a separate memorandum by SILVERMAN, J.

Order, Supreme Court, New York County, entered on June 24, 1982, unanimously reversed, on the law, without costs and without disbursements, the motion denied and the first and second causes of action reinstated.