USCA1 Opinion

 

 January 24, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 91-1665 LAWRENCE S. BEVIS, JR., ETC., Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ ERRATA SHEET Please make the following correction on opinion issued January 15, 1992: Cover sheet: delete "and Paul Levenson". ___________________ No. 91-1665 LAWRENCE S. BEVIS, JR., ETC., Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ___________________ Before Campbell, Selya and Cyr, Circuit Judges. ______________ ___________________ William T. Desmond on brief for appellant. __________________ Wayne A. Budd, United States Attorney, and William L. ______________ ___________ Parker, Assistant United States Attorney, on Motion for Summary ______ Affirmance for appellee. __________________ __________________ Per Curiam. On August 8, 1988, the Lowell Sun ___________ published a photo of a patient being attended by doctors in an intensive care unit of a veterans hospital. Claiming that the patient in the photograph was Lawrence S. Bevis, Sr., and that the photograph had been taken without Bevis's permission, the administrator of Bevis's estate filed law suits complaining of the actions of government employees in allowing Bevis to be photographed. The administrator contended that photographing Bevis violated Bevis's constitutional and state law (Mass. G. L. ch. 214, 1B) right to privacy as well as 5 U.S.C. 552a(b). The government moved for summary judgment. It submitted a copy of the photo and asserted, among other things, that Bevis's privacy rights could not possibly have been violated because the patient in the photograph was obscured by equipment and personnel and was not identifiable. Accompanying the government's motion were affidavits from the public affairs specialist at the VA hospital and the Lowell Sun photographer who had taken the picture. The special affairs officer asserted that the public "has general access to the hospital. Accordingly, patients in their beds are subject to being observed by visitors, contractors, volunteers, interns, residents and the news media, among others ...." It was her opinion that "patients have no expectation of privacy from being observed while in the hospital." She had accompanied the Lowell Sun photographer on a tour of the hospital and had explained to him that VA policy precluded the taking of "pictures of patients 2 who could be identified without first obtaining their written consent on VA form 10-3203." The photo had been taken in the intensive care unit with the public affairs specialist's consent, from a position in which the patient was not identifiable, and with the agreement that the photo would not be published in the unlikely event that the patient could be identified. An affidavit from the then director of the intensive care unit stated that on July 17 (the day the ICU was photographed), Bevis had become unconscious. He died two days later without gaining consciousness. Plaintiff administrator opposed the government's motion for summary judgment, but filed no counter affidavits. The district court thereafter entered summary judgment for the government on the ground that no invasion of privacy had occurred as the patient was unidentifiable. Plaintiff administrator has appealed. I _ We have examined the photograph. To be sure, the question whether a photograph identifies the plaintiff may often present a fact question. See, e.g., Cohen v. Herbal Concepts ___ ___ _____ _______________ Inc., 100 A.D.2d 175, 473 N.Y.S. 2d 426 (App. Div. 1984) ___ (identity of nude subjects whose faces were not shown but one of whom had distinctive short hair and dimples was factual issue for trial), aff'd, 63 N.Y.2d 379, 472 N.E.2d 307, 482 N.Y.S.2d 457 _____ (1984). Here, however, we agree with the district court that the patient in the photograph is not identifiable as a matter of law. 3 The foreground of the photo shows medical equipment and a nurse. Behind the equipment and partially blocked by it is the patient, draped with a sheet. Neither the patient's face nor any other part of the patient's body is discernable. Consequently, to the extent the claim of invasion of privacy was based on the publication of the photograph, summary judgment was properly granted for the government.1 II __ Plaintiff argues, however, that an invasion of privacy occurs when a photographer is allowed by the hospital to photograph a patient without the patient's permission regardless whether the picture is ever published or the patient is identifiable. Consequently, plaintiff argues, even if the patient in the photograph can not be identified, that fact is not fatal to plaintiff's cause of action. We turn to this argument, addressing each of plaintiff's three legal bases. 1. FTCA Claim Under the FTCA, the government is liable for injuries caused by a government employee "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. 1346(b). Here, the actions occurred in Massachusetts, so Massachusetts law ____________________ 1 Since the photograph can not be said to identify the deceased, we need not address whether the publication of a photo after the subject's death could ever be actionable. Miller v. ______ National Broadcasting Company, 187 Cal. App. 3d 1463, 1485, 232 _____________________________ Cal. Rptr. 668 (1986) (right of privacy dies with the person); W. Prosser, Law of Torts 815 (no common law right of action for a publication concerning one who is dead). 4 controls. Massachusetts law provides as follow: "A person shall have a right against unreasonable, substantial or serious interference with his privacy." Mass. G.L. ch. 214, 1B. The precise contours of the privacy right have not been spelled out, but Massachusetts courts have looked to the Restatement (Second) of Torts for reference. See, e.g. Cefalu v. Globe Newspaper Co, ___ ___ ______ __________________ 8 Mass. App. Ct. 71, 391 N.E.2d 935 (1979) (noting distinction Restatement (Second) of Torts draws between publication of a picture taken on a public street (which is not an invasion of privacy) and one taken in a private place (which would be an invasion of privacy) and concluding that a newspaper photo of plaintiff standing with others in a line for unemployment benefits did not violate plaintiff's privacy as plaintiff was in a public place), cert. denied, 444 U.S. 1060 (1980). ____ ______ Although neither party refers to it, the Restatement, in turn, provides perhaps the strongest support for plaintiff's argument that the mere photographing of a patient -- even if the photo is never published -- may violate the patient's privacy. The relevant provision provides as follows: 652B. Intrusion upon Seclusion One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. Restatement (Second) of Torts 652B (1977). Comments a and b underscore that publication is not required: a. The form of invasion of privacy covered by this 5 Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man. . . . b. . . . . The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined. As an example of an actionable intrusion upon seclusion, the Restatement refers to a reporter photographing a hospital patient without the patient's permission: Illustrations: 1. A, a woman, is sick in a hospital with a rare disease that arouses public curiosity. B, a newspaper reporter, calls her on the telephone and asks for an interview, but she refuses to see him. B then goes to the hospital, enters A's room and over her objection takes her photograph. B has invaded A's privacy. Causes of action have been stated in various circumstances involving unreasonable intrusion upon hospital patients' privacy. See, e.g., Barber v. Time, Inc, 348 Mo. 1199, ___ ___ ______ _________ 159 S.W.2d 291 (1942) (close-up photo of patient taken in her hospital room without her permission); Noble v. Sears, Roebuck & _____ ________________ Co., 33 Cal. App. 3d 654, 659, 109 Cal. Rptr. 269 (1973) (if __ private investigator did in fact gain entrance to patient's hospital room and obtain information by deception, then his conduct may indeed have been unreasonably intrusive); Commonwealth v. Wiseman, 356 Mass. 251, 249 N.E.2d 610 (1969) ____________ _______ (restricting audience which may view film of patients at 6 Bridgewater State Hospital), cert. denied, 398 U.S. 960 (1970). ____ ______ Superficially, there may be a resemblance between the present case and the Restatement illustration. In both cases, a patient was photographed without the patient's permission. But, in addition to the fact that the defendants in the present case were the hospital employees rather than the photographer, there is a major and dispositive difference between the illustration which, we think, assumes unilateral action by a reporter unauthorized by the hospital, and the present case, where the photographer was accompanied by hospital personnel and directed not to take photos in which any patient would be identifiable. Escorting by hospital personnel, whose jobs render them more sensitive to and protective of patients' concerns than would the unchecked photographer roaming at will, provides a safeguard against unreasonable intrusion. To be sure, it may not be foolproof. In other words, we do not now decide whether a hospital escort would invariably foreclose any claim for the intrusion upon seclusion branch of the tort of invasion of privacy.2 But, in the present case, the uncontradicted affidavits disclose nothing unduly intrusive or unreasonable. ____________________ 2 See, e.g. Knight v. Penobscot Bay Medical Center, 420 A.2d ___ ___ ______ ____________________________ 915, 917, 918 (Me. 1980) (invasion of privacy action in which hospital nurse permitted nurse's husband to view the delivery of plaintiff's baby submitted to the jury; jury found for defendants); Y.G. v. The Jewish Hosp. of St. Louis, 795 S.W. 2d ____ ______________________________ 488 (Mo. App. 1990) (allegations that hospital invited participants in the in vitro fertilization program to a social gathering assuring them that no publicity would occur, but then permitted a news team to film the event, stated a cause of action for invasion of privacy). 7 The photographer, according to his affidavit, stood 20 feet from the patient's bed. The patient did not face the camera, did not appear to be aware of the photographer, and was "not undressed or in a compromising position." The photographer's obscured viewing of the patient was no more intrusive than that of, say, a flower delivery person passing through the unit or another patient's wayward visitor. In other words, by accompanying the photographer through the unit and allowing photos only so long as the patient could not be identified, the hospital did not subject patients to any materially different disturbance or intrusion than that to which they are normally exposed in the daily operation of the hospital. To be actionable, an intrusion must be "highly offensive to a reasonable person." Restatement (Second) of Torts 652B (1977). See also Restatement (Second) ___ ____ of Torts, 652B, comment d (1977) ("there is . . . no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object"). Defendants' uncontradicted affidavits reveal nothing "highly offensive." Plaintiff failed to present any genuine issue of material fact for trial. Consequently, summary judgment on the FTCA claim was proper.3 ____________________ 3In view of our disposition, we need not decide whether a cause of action for the intrusion upon seclusion branch of invasion of privacy would survive the injured party's death. See ___ Pine v. Rust, 404 Mass 411, 535 N.E.2d 1247 (1989) (cause of ____ ____ action under G.L. ch. 272, 99 for illegal interception of 8 2. 5 U.S.C. 552a(b) This statute, which forbids any agency from disclosing any "record which is contained in a system of records" except under specified circumstances is irrelevant as there is no indication that any record was disclosed. Plaintiff failed to articulate any violation. 3. Constitution As we have concluded as a matter of law that the patient in the photograph is unrecognizable and that no unreasonable intrusion occurred, no federal constitutional privacy right was violated. Affirmed. ________ ____________________ private communications did not survive plaintiff's death); Harrison v. Royal Protective Life Ins. Co., 379 Mass. 212, 396 ________ ______________________________ N.E.2d 987 (1979) (tort action for intentional infliction of emotional distress survives death of injured party). 9