GARDNER JACKSON, Plaintiff, *v.* CONSUMER PUBLICATIONS, INC., Defendant.

Supreme Court, Special Term, New York County, January 4, 1939.

*Liebman, Robbins, Pressman & Leider* [*D. William Leider* and *Harold I. Cammer* of counsel], for the plaintiff.

*Cyrus M. Lerner,* for the defendant.

COLLINS, J. The defendant's motion for reargument is granted. The issue raised by the original motion is whether or not the remedies

supplied by section 51 of the Civil Rights Law, which section protects the " right of privacy," are available to a non-resident of this State. The defendant earnestly argues the negative; the original decision upheld the affirmative (N. Y. L. J. Nov. 17, 1938).

The statute itself does not restrict its protectory provisions to residents, and no cogent reasons are presented to sustain the advocacy of discrimination against non-residents. Although the precise question has not been decided, it would seem that in some of the reported cases the plaintiffs were non-residents.

Section 50 of the Civil Rights Law reads: " A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

To adopt the policy that one employing within the State the name or portrait of a non-resident " for the purposes of trade, * * * without having first obtained the written consent of such person," is immune from prosecution, would contort the law to partial destruction. It appears to me indubitable that a prosecution would lie even though the person whose name and portrait were thus utilized were a non-resident. It would follow from this construction that section 51, which grants redress to the person whose right of privacy has been offended, is available to a non-resident. Section 51 provides: " Any person whose name, portrait or picture is used within this State for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the Supreme Court of this State against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages. But nothing contained in this act shall be so construed as to prevent any person, firm or corporation, practicing the profession of photography, from exhibiting in or about his or its establishment specimens of the work of such establishment, unless the same is continued by such person, firm or corporation after written notice objecting thereto has been given by the person portrayed; and nothing contained in this act shall be so construed as to prevent any person, firm or corporation from using the name, portrait or picture of any manufacturer or dealer in connection with the goods, wares and merchandise manufactured, produced or

dealt in by him which he has sold or disposed of with such name, portrait or picture used in connection therewith; or from using the name, portrait or picture of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or picture used in connection therewith."

To deny the protection of section 51 to a non-resident would mean that the name and picture of a non-resident could be spread across every billboard in this State to advertise a commercial product without permission, restraint, hindrance or compensation.

If the Legislature intended that the law apply only to residents, such intention could and would have been made manifest. The language " any person " means " any person," not " any resident."

The defendant argues that since the statute is in derogation of the common law (*Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538), the holding in the original decision that " the statute should be given a liberal rather than a pinched construction " (N. Y. L. J. Nov. 17, 1938, p. 1670) is erroneous. The fallacy of the defendant's reasoning lies in its refusal to separate the penal from the remedial features of the law. Section 50 is penal, section 51 remedial. " The statute is in part at least penal." (*People [Stern]* v. *McBride & Co.*, 159 Misc. 5, 10; *Binns* v. *Vitagraph Co.*, 210 N. Y. 51, 55.) In a larger sense, however, " the statute is remedial, having its root in dissatisfaction with what was felt to be an archaic rule of law. Interpretation should aid this purpose." (SHIENTAG, J., in *Lahiri* v. *Daily Mirror, Inc.*, 162 Misc. 776, 779.)

" It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied." (Mr. Justice CARDOZO in *Van Beeck* v. *Sabine Towing Co.*, 300 U. S. 342.) A statute of this character is not " to be obeyed grudgingly, by construing it narrowly and treating it as though it did not exist for any purpose other than that embraced within the strict construction of its words." It is " not an alien intruder in the house of the common law, but a guest to be welcomed and made at home there as a new and powerful aid in the accomplishment of its appointed task of accommodating the law to social needs." (Mr. Justice STONE, The Common Law in the United States, 50 Harv. Law Rev. 4, 14, 15.) Since the statute creates a right directed " against the commercial exploitation of one's personality " (Bohlen, Fifty Years of Torts, 50 Harv. Law Rev. 725, 731; *Lahiri* v. *Daily Mirror, Inc., supra*), it should be construed accordingly. The construction should square with the purpose. The interpretation advanced by the defendant would

immunize exploiters of one's personality in that vast number of instances where the personalities offended happened to be non-residents. Such circumscribed interpretation is rejected as unauthorized, unsound and repugnant to the design and spirit of the statute. Accordingly, the original decision is adhered to.