Henry Epstein, J.
Defendant Time, Inc., moves to dismiss the instant complaint [see, also, 14 Misc 2d 249] on the ground that no canse of action is set forth and for entry of judgment accordingly. The action is brought for damages based on a violation of plaintiffs’ rights of privacy under section 51 of the Civil Rights Law of this State. That statute prohibits the unauthorized use in this State of any “ portrait or picture [of any person] * * * for advertising purposes or for the purposes of trade ’ ’. Defendant bases its motion on the thesis that the matter complained of was news of general interest to the public and its free dissemination overrides the statutory right here relied on.
*864 The facts are briefly these: In September, 1952 three escaped convicts held plaintiffs and their five children for 19 hours as hostages in the home of plaintiffs in Whi'temarsh Township, Pennsylvania. The incident received wide publicity, local and nation-wide. Plaintiffs refused to appear on the Ed Sullivan television show at this time and shortly thereafter (November, 1952) removed the family to Old Greenwich, Connecticut. The family change of residence was for business reasons and not necessarily to avoid the publicity connected with the ‘ ‘ hostage ’ ’ incident. Defendant Hayes wrote a best-seller novel in 1954 under the title “ The Desperate Hours The book was the basis for a play under the same name in 1954 and a motion picture to follow the play, filmed in 1955. Examinations of defendants Hayes and Erskine amply satisfy this court that the play and the motion picture were wholly divorced from and not based on the unfortunate incident of plaintiffs in September, 1952. Many incidents in widely separated parts of this country supplied material from which the story and play were drawn. The book and play came into being more than two years after the plaintiffs’ episode. By this time plaintiffs were leading a quiet family life in Connecticut.
In the February 28, 1955 issue of Life magazine plaintiffs and their children are identified as the ‘ ‘ true life ’ ’ family of the book and play “ The Desperate Hours ”. There was no consent sought or given. The original “incident” of 1952 was no longer “news”, current or otherwise. Defendant’s magazine “ Life ” created an wholly fictitious display for commercial advertising and trade purposes, using plaintiffs’ names and family as the basis for a “ true-life thriller ”. The play and motion picture lent the stimulus to the writer and publisher. The use of plaintiffs’ former home in Pennsylvania gave the story a verisimilitude of truth and accuracy wholly unwarranted. The parallel column display of the plaintiffs’ incident and the play and picture do not warrant the conclusion that defendant Time, Inc., has been sedulous in its adherence to the concept of a “ free press ” news story. The result is a piece of commercial fiction — at least on the papers before this court.
As late as May 1, 1954, plaintiff James J. Hill again flatly refused to permit the 1952 incident to be used for publicity purposes. There is a broad line of demarcation between the facts here and those of the cases cited by defendant Time, Inc., in its briefs. Gautier v. Pro-Football (278 App. Div. 431, affd. 304 N. Y. 354 [1952]); Binns v. Vitagraph Co. of America (210 N. Y. 51); Sutton v. Hearst Corp. (277 App. Div. 155); Metzger *865 v. Dell Pub. Co. (207 Misc. 182)—all would support the position of plaintiffs. Nor do we find any basic contrary propositions in the ‘ ‘ news ” or “ general interest ’ ’ cases of defendant Time’s brief: Lahiri v. Daily Mirror (162 Misc. 776); Koussevitzky v. Allen, Towne & Heath (188 Misc. 479, affd. 272 App. Div. 759); Tracy v. Newsday, Inc. (5 N Y 2d 134); Goelet v. Confidential (5 A D 2d 226). Nor does the fact that the article is not ‘ ‘ uncomplimentary ’ ’ help defendant. The statutory protection survives even ‘1 2complimentary ’ ’ publicity. The article published constitutes advertising of a wholesale character for the book, play and motion picture. It is not limited to news publication and fair comment. Surely an issue of fact is presented which bars summary judgment.
The Connecticut residence of plaintiffs and the Pennsylvania situs of the plaintiffs’ former home cannot bar the action in New York under our Civil Eights Law. The publication was concededly widely distributed in New York State. A like consideration was faced in Jackson v. Consumer Pubs. (169 Misc. 1022, affd. 256 App. Div. 965 [1st Dept.]). Donahue v. Warner Bros. Pictures (194 F. 2d 6) is in accord with this conclusion, as is Hazlitt v. Fawcett Pubs. (116 F. Supp. 538). This publication in the Life article would seem clearly actionable under the New York Civil Eights Law. There is on the papers before this court an unlawful use of plaintiffs’ names for purposes of advertising, trade and profit. Motion of defendant Time, Inc., is denied.