Robert L. HABUSH and Daniel A. Rottier,
Plaintiffs-Appellants,†

v.

William M. CANNON, Patrick O. Dunphy
and Cannon & Dunphy, S.C.,
Defendants-Respondents.

Court of Appeals

*No. 2011AP1769. Submitted on briefs June 8, 2012.
—Decided February 21, 2013.*

2013 WI App 34

(Also reported in 828 N.W.2d 876.)

† Petition for Review denied 5-13-13.

710

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James R. Clark* and *Adam E. Crawford* of *Foley & Lardner LLP*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *J. Ric Gass* of *Gass Weber Mullins, LLC*, Milwaukee.

Before Lundsten, P.J., Higginbotham and Blanchard, JJ.

¶ 1. LUNDSTEN, P.J. This appeal concerns the right of privacy, as codified in WIS. STAT. § 995.50(2)(b),[1]

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

and the practice of using a person's name as a "keyword" search term in an Internet search engine. Here, the law firm Cannon & Dunphy bid on the search terms "Habush" and "Rottier" through Google, Yahoo!, and Bing search engines. Cannon & Dunphy, by successfully bidding on the names Habush and Rottier, assured that, when a person entered either name as a search term into one of these search engines, a link to Cannon & Dunphy's website would appear as a "sponsored link" above the "organic" link to the law firm of Habush Habush & Rottier. Attorneys Robert Habush and Daniel Rottier contend that, by successfully bidding on their names, Cannon & Dunphy violated § 995.50(2)(b) by using their names for advertising or trade purposes. We conclude that Cannon & Dunphy's "use" of the names Habush and Rottier is not "use" within the meaning of § 995.50(2)(b). We therefore affirm the circuit court's decision granting summary judgment in favor of Cannon & Dunphy.[2]

---

[2] The parties sometimes use the shorthand phrases "the right of privacy" and "the right of publicity" as a reference to the right codified in Wis. Stat. § 995.50(2)(b). This comports with language used by courts addressing comparable statutory and common law rights. *See, e.g., Flores v. Mosler Safe Co.*, 164 N.E.2d 853, 854 (N.Y. 1959) ("the right of privacy"); *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 391, 280 N.W.2d 129 (1979) ("the right of publicity"). Some courts have distinguished between "the right of publicity" (an intellectual property right) and the tort of misappropriation (a privacy right). *See, e.g., AFL Philadelphia LLC v. Krause*, 639 F. Supp. 2d 512, 530–31 (E.D. Pa. 2009) (discussing the tort of misappropriation of name and the right of publicity as "different, though similar, torts"); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 28:6 (4th ed. 2012). We choose not to use these shorthand terms because they seem problematic in that they are either not intuitively descriptive ("right of publicity") or somewhat misleading (§ 995.50(2)(b) does not define *the* "right of privacy," just one of four).

## Background

¶ 2. Robert Habush and Daniel Rottier are trial attorneys and shareholders in the firm of Habush Habush & Rottier. It is undisputed that Habush and Rottier are both well-known personal injury trial attorneys and their names have commercial and advertising value. Cannon & Dunphy is a law firm with a specialty in personal injury cases.

¶ 3. Internet search engines like Google, Yahoo!, and Bing produce at least three types of search results for Internet searchers: organic results, advertising results, and sponsored results. Organic results are lists of links to websites that are produced based on algorithms developed by each search engine. Advertising and sponsored results are produced by allowing advertisers to bid on and pay for the use of keyword search terms. When a search engine user enters keywords that have been bid on, lists of links to the websites of successful bidders are displayed in a special position on the user's web browser. "Advertising" results generally appear to the right of the organic search results. "Sponsored" results generally appear above the organic results and are usually set in background shading with the words "sponsored link" or "ad."

¶ 4. Beginning in 2009, Cannon & Dunphy bid on the keyword search terms "Habush" and "Rottier" through the search engines Google, Yahoo!, and Bing. This bidding assured that, in response to an Internet user's search of the terms "Habush" or "Rottier," links to the website of Cannon & Dunphy would appear as the first result above the organic results lists. Under the bidding arrangements, Cannon & Dunphy's successful bids mean that it pays the search engine companies each time an Internet user clicks on Cannon &

Dunphy's sponsored links. The links to the Cannon & Dunphy website and the law firm's website itself contain no reference to the names Habush or Rottier.

¶ 5. Robert Habush and Daniel Rottier sued Cannon & Dunphy, William Cannon, and Patrick Dunphy (collectively "Cannon & Dunphy"). Habush and Rottier alleged that, by bidding on the keyword search terms "Habush" and "Rottier," Cannon & Dunphy used the names for advertising purposes without Habush's and Rottier's written consent in violation of WIS. STAT. § 995.50(2)(b). Habush and Rottier sought equitable relief in the form of an injunction, as well as attorneys' fees, pursuant to § 995.50(1)(a) and (c).[3]

¶ 6. The parties filed cross-motions for summary judgment. The circuit court determined that Habush and Rottier must prove two elements: 1) there was an invasion of privacy under WIS. STAT. § 995.50(2)(b); and 2) that the invasion of privacy was done "unreasonably" within the meaning of § 995.50(1). The circuit court concluded that Habush and Rottier succeeded in establishing the first element, that Cannon & Dunphy used the names Habush and Rottier for the purposes of advertising or trade by bidding on them as keyword search terms, but did not establish the second element, that such an invasion was unreasonable. The court, therefore, granted summary judgment in favor of Cannon & Dunphy. While our analysis differs, we agree with what we understand to be the circuit court's pivotal reasoning—that the use of the names here is

_____

[3] Although Habush Habush & Rottier, S.C., was originally a co-plaintiff, the circuit court dismissed the firm from this action based on the court's determination that only living persons could bring a claim for invasion of privacy, a conclusion not challenged in this appeal.

714

different in kind from the type of use the statute is intended to cover. Accordingly, we affirm the circuit court.

*Discussion*

■

¶ 7. Habush and Rottier argue that the undisputed facts show that Cannon & Dunphy violated WIS. STAT. § 995.50(2)(b). We begin with a brief summary of the disputed statutory provisions.

¶ 8. WISCONSIN STAT. § 995.50(1) entitles anyone "whose privacy is unreasonably invaded" to equitable relief, compensatory damages, and reasonable attorney fees. Section 995.50(2) contains four alternative ways that a party's privacy might be invaded. The privacy right at issue here is § 995.50(2)(b), which provides:

> **(2)** In this section, "invasion of privacy" means any of the following:
>
> . . . .
>
> (b) The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.

¶ 9. Thus, on its face, WIS. STAT. § 995.50(2)(b) requires only proof of the following:

1. "use . . . of the name, portrait or picture of any living person";

2. "use" that is "for advertising purposes or for purposes of trade"; and

3. "use" without "written consent."

715

The parties, however, focus their attention on whether the term "unreasonably invaded" in § 995.50(1) adds an element of proof to this list.

¶ 10. Broadly speaking, the circuit court and Cannon & Dunphy take the position that "unreasonably invaded" is an *additional* requirement that both limits and defines the reach of § 995.50(2)(b). Habush and Rottier, on the other hand, contend that it would be "nonsensical to engraft . . . an additional unreasonableness requirement on top of" the requirements already contained in the defined violations in the subsections of § 995.50(2), including the subsection at issue here, § 995.50(2)(b). Habush and Rottier seemingly assume that, if there is no additional "unreasonably invaded" element, it is obvious that Cannon & Dunphy's use of their names is a violation of § 995.50(2)(b). In sum, the circuit court and the parties primarily see this case as turning on whether § 995.50(1), with its "unreasonably invaded" language, adds an additional element to § 995.50(2)(b). In our view, this framing of the issue needlessly complicates resolution of this particular dispute.

¶ 11. As Habush and Rottier point out, § 995.50(2)(b) is modeled after a New York statute that has no "unreasonably invaded" language. Consequently, apart from Habush's and Rottier's explanation as to why we should not read "unreasonably invaded" language as imposing an additional element of proof on a plaintiff suing under § 995.50(2)(b), Habush's and Rottier's argument effectively explains why, in their view, Cannon & Dunphy's keyword bidding constitutes prohibited "use" within the meaning of § 995.50(2)(b). In essence, we agree with Habush and Rottier that this latter topic is the key, but disagree on the coverage of § 995.50(2)(b).

716

¶ 12. Accordingly, we direct our attention to the meaning of the term "use" in § 995.50(2)(b) and whether Cannon & Dunphy's actions constitute "use" within the meaning of that term.

¶ 13. Our reframing of the issue does not prejudice Habush and Rottier. For example, although Habush's and Rottier's "incidental use" argument is placed in the context of a discussion of "unreasonably invaded," the substance of their argument is that we should read "use" in § 995.50(2)(b) broadly. Habush and Rottier write:

> The common-law doctrine of "incidental use" prevents the Subsection (2)(b) tort from being applied to minor or trivial uses of another person's name, or in publications with news or other literary or entertainment value, which do not exploit the commercial value associated with a living person's name. The words "unreasonably invaded" should not be construed any broader than necessary to keep these incidental uses from the statute's reach.

The gist of Habush's and Rottier's argument here, and elsewhere, is that use of any type should be covered if such use is an attempt to exploit the value of a name or image. This is an argument we fully address below.

¶ 14. In effect, our approach assumes without deciding that Habush and Rottier are correct that they need not meet an additional "unreasonably invaded" requirement. And, in the context of interpreting the term "use," we address all of Habush's and Rottier's substantive arguments on the coverage of § 995.50(2)(b). Accordingly, from this point forward, we speak in terms of the meaning of "use," and sometimes cast the parties' arguments the same way.[4]

---

[4] This approach means that we need not address several arguments specifically directed at the circuit court's reliance on

¶ 15. Our interpretation of the word "use" in Wis. Stat. § 995.50(2)(b) is guided by the following statutory interpretation principles:

> This case presents a question of statutory interpretation, which we review de novo. The purpose of statutory interpretation is to determine what a statute means in order to give the statute its full, proper, and intended effect. "We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used." Generally, language is given its common, ordinary, and accepted meaning. In addition, statutory language is interpreted in the context in which it is used, in relation to the language of surrounding or closely-related statutes, and interpreted to avoid absurd or unreasonable results.
>
> "If the meaning is plain, we ordinarily stop the inquiry." However, if a statute is ambiguous, we examine extrinsic sources, such as legislative history, to ascertain the legislative intent. A statute is ambiguous if "[t]he statute's ability to support two reasonable constructions creates an ambiguity which cannot be

---

the "unreasonably invaded" language. For example, we do not address Habush's and Rottier's criticism of the circuit court's conclusion that "unreasonably" in Wis. Stat. § 995.50(1) means irrational or lacking a rational basis. Furthermore, we do not purport to address all of Habush's and Rottier's other arguments. That is, we do not address all arguments that are not directed at the circuit court's reliance on "unreasonably invaded" language. As is common in our opinions, we ignore arguments directed at the circuit court's reasoning that we do not rely on. For example, we do not rely on the circuit court's view that consideration should be given to the importance of promoting competition in the state or the circuit court's conclusion that Habush and Rottier have a diminished privacy expectation in their names because the names are part of their law firm's name. Therefore, we need not address Habush's and Rottier's arguments on these topics.

resolved through the language of the statute itself. [A] statutory provision is ambiguous if reasonable minds could differ as to its meaning."

*Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶¶ 16–17, 290 Wis. 2d 421, 714 N.W.2d 130 (citations omitted).

¶ 16. If our statutory interpretation analysis reveals ambiguity because we are presented with competing reasonable interpretations, it is our task to choose the more reasonable interpretation. *See, e.g., State v. Dartez*, 2007 WI App 126, ¶¶ 15, 16–17, 301 Wis. 2d 499, 731 N.W.2d 340 (choosing the "more reasonable" interpretation of a statute); *Abbas v. Palmersheim*, 2004 WI App 126, ¶ 24, 275 Wis. 2d 311, 685 N.W.2d 546 (choosing "the most reasonable interpretation" of a statute).

¶ 17. Applying these statutory interpretation rules here, we conclude that the word "use" is ambiguous as applied to the facts in this case because the parties present two competing and reasonable interpretations of "use."

¶ 18. Habush and Rottier promote a reading of the statute that provides broad coverage. They contend that "use" in Wis. Stat. § 995.50(2)(b) covers *any kind of use* of a name or image if such use takes advantage of the commercial value of a person's identity. In support, Habush and Rottier point to common law indicating that an important purpose of the privacy right codified in § 995.50(2)(b) is the protection of an individual against the exploitation of his or her reputation for the benefit of another. Habush and Rottier rely on the Restatement of Torts, and case law applying the Restatement, for the proposition that any use through

719

which the user seeks to obtain the benefit of the "commercial or other values associated with the name" is an invasion of privacy. *See* RESTATEMENT (SECOND) OF TORTS § 652C, at 380 (1977) ("One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."); *AFL Philadelphia LLC v. Krause*, 639 F. Supp. 2d 512, 529–32 (E.D. Pa. 2009) (applying Restatement language); *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587, 591–92, 596 (N.D. Tex. 1999) (same); *James v. Bob Ross Buick, Inc.*, 855 N.E.2d 119, 123 (Ohio Ct. App. 2006) (same).

¶ 19. Habush and Rottier argue that the only "uses" not covered by WIS. STAT. § 995.50(2)(b) are uses that are incidental. We understand their argument to be that "use" is not incidental if the use involves an attempt to benefit from the commercial or other value of a person's name or image. According to Habush and Rottier, because Cannon & Dunphy used the names Habush and Rottier in a manner that benefitted Cannon & Dunphy, the law firm used the names within the meaning of § 995.50(2)(b).

¶ 20. We conclude that this broad interpretation of "use" is reasonable because, as Habush and Rottier explain, it comports with an important purpose underlying WIS. STAT. § 995.50(2)(b).

¶ 21. Cannon & Dunphy argues that the legislature intended to cover only "use" that is *visible* to the public in the sense that the used name or image is "found *in* or *on* the defendant's product or solicitation for services" (emphasis in original). Under Cannon & Dunphy's reading of the statute, the law firm's use of the names Habush and Rottier is not a violation because the use is not visible in Cannon & Dunphy's sponsored links or its website. The "use" that Habush

and Rottier complain about here is, according to Cannon & Dunphy, invisible. The allegedly improper "use" is merely a mechanism by which Cannon & Dunphy places its advertising near a link to information about Habush Habush & Rottier.[5] Cannon & Dunphy argues that this is a different kind of use than that to which the privacy right codified in § 995.50(2)(b) has historically applied.

¶ 22. We conclude that Cannon & Dunphy's interpretation is also reasonable because it is consistent with case law on which the statute is based and on case law interpreting statutory language that is comparable for our purposes. In every case brought to our attention by the parties and discovered in the course of our own research, the "use" of the name or image at issue was a visible part of some sort of promotion or product. *See, e.g., Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 382, 280 N.W.2d 129 (1979) (nickname "Crazylegs" on shaving gel product); *Beverley v. Choices Women's Med. Ctr., Inc.*, 587 N.E.2d 275, 276–77 (N.Y. 1991) (physician's photo in a calendar promoting a medical center); *Spahn v. Julian Messner, Inc.*, 221 N.E.2d 543, 544 (N.Y. 1966), *adhered to on remand and rearg.*, 233 N.E.2d 840 (N.Y. 1967) (fictionalized biography of plaintiff's life); *Flores v. Mosler Safe Co.*, 164 N.E.2d 853, 854 (N.Y. 1959) (plaintiff's name in a news article

---

[5] In their appellate brief-in-chief, Habush and Rottier clarify the "use" that they say violates the statute. After criticizing the circuit court for focusing on the "resulting advertisement [and] its location relative to the web listings for Habush and Rottier," Habush and Rottier state: "But it is not the content of the advertisement itself or its positioning that is at issue here. This claim arises by virtue of the use of Habush's and Rottier's names *to cause* the Cannon's advertisements to appear within searches for Habush and Rottier." (Emphasis in original.)

reprinted in a "circular" promoting a product); *Reilly v. Rapperswill Corp.*, 377 N.Y.S.2d 488, 489–90 (N.Y. App. Div. 1975) (television broadcast journalists' newscast used in a demonstrational film for foam insulation manufacturer); *Blumenthal v. Picture Classics, Inc.*, 257 N.Y.S. 800, 800–01 (N.Y. App. Div. 1932) (plaintiff's picture in an entertainment film); *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 822 (9th Cir. 1974) (use of altered photograph of plaintiff's race car in television commercial); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396–97 (9th Cir. 1992) (robot resembling game show personality Vanna White used in advertisement); *AFL Philadelphia LLC*, 639 F. Supp. 2d at 518 (email address indicating former sales director's name as the sender of emails to fans of arena football team); *Henley*, 46 F. Supp. 2d at 589, 592–93 (musician's name used in "wordplay" in a newspaper advertisement for clothing); *Negri v. Schering Corp.*, 333 F. Supp. 101, 102–03 (S.D.N.Y. 1971) (actress's photo in a print advertisement for allergy medication); *James*, 855 N.E.2d at 120–21 (ex-employee's name in letters to customers).[6]

---

[6] We agree with the parties' apparent agreement that such cases, addressing the same or a comparable privacy right and which both predate and post-date the enactment of Wis. Stat. § 995.50, are appropriate extrinsic sources. Our legislature has directed that § 995.50 must be "interpreted in accordance with the developing common law of privacy." Wis. Stat. § 995.50(3). Reliance on New York case law is particularly useful to our analysis because the Wisconsin legislature used New York's privacy statute as a model for § 995.50(2)(b). *See* Judith Endejan, *The Tort of Misappropriation of Name or Likeness Under Wisconsin's New Privacy Law,* 1978 Wis. L. Rev. 1029, 1034 n.30, 1041 ("Case law under the New York privacy statute may be particularly useful because subsection (2)(b) was modeled after the New York law." (footnote omitted)); *Ditsch v. Finn*, 214

¶ 23. Because Habush and Rottier and Cannon & Dunphy have presented competing reasonable interpretations of the word "use" as it applies to the facts before us, we must choose the more reasonable interpretation. We conclude, in general terms, that the more reasonable interpretation is the one advanced by Cannon & Dunphy. But we do not adopt a comprehensive definition. Rather, our holding is limited to the particular "non-visible" type of use at issue here. In reaching this conclusion, we first examine the parties' discussion of the circuit court's "proximity" advertising examples, and then address additional arguments made by Habush and Rottier.[7]

---

Wis. 305, 310, 252 N.W. 562 (1934) ("When a statute has been judicially construed before its adoption by this state, the construction given it by the courts of the state from which it was borrowed is also adopted.").

[7] We agree with Habush and Rottier that no case appears to have imposed a visibility requirement. On the other hand, we disagree with Habush's and Rottier's assertion that one court has held that use need only be "in connection with" an advertisement or trade purpose, which need not include "display." For this proposition, Habush and Rottier cite *School of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804, 812 (N.Y. Sup. Ct. 2003). Our review of that case discloses that it did not turn on the meaning of use, but rather on the fact that any potential use was not for advertising or trade purposes. *Id.* The court stated that "there is no allegation" that the plaintiff's name was used "in connection with" the websites in dispute. *Id.* It is true that the New York court commented that the "use" element is satisfied when a name is used "in connection with" an advertisement, but the court did not purport to address the type of visibility issue we have here. *See id.*

Similarly, we disagree with a characterization of law made by Cannon & Dunphy. Cannon & Dunphy overstates holdings when it asserts that "[c]ourts considering the right of publicity require that for a name or likeness to be 'used,' it must be *visible* to the public" (emphasis in original). This statement is inaccu-

*Proximity Advertising*

¶ 24. The circuit court concluded that Cannon & Dunphy's use of the names Habush and Rottier is comparable to practices that Habush and Rottier concede are proper. The circuit court's "proximity" examples include: (1) a car dealership that locates across the street from an established car dealership; (2) a business that places advertising billboards next to a competitor's existing billboards; and (3) a lawyer placing a yellow pages ad in proximity to the phone listing of competing lawyers. The circuit court further stated that it was undisputed that Cannon & Dunphy could open a branch office next door to an existing Habush Habush & Rottier branch office. In these instances, the circuit court explained, "[t]he first business owner . . . may have been quite unhappy to see others come to take advantage of his or her success," but there is no violation.[8]

¶ 25. The circuit court's assertion that these examples are not disputed appears to be correct. On appeal, Habush and Rottier do not argue that the court's examples constitute impermissible "use" within the meaning of Wis. Stat. § 995.50(2)(b). Rather,

_____

rate because none of the cases Cannon & Dunphy relies on contain this holding. For example, Cannon & Dunphy points to *Jeffries v. New York Evening Journal Publishing Co.*, 124 N.Y.S. 780 (N.Y. Sup. Ct. 1910), but that case says only that a photo is not used *for advertising purposes* unless it is "part of an advertisement." *Id.* at 781. The *Jeffries* court did not more broadly state a proposition covering all use.

[8] We acknowledge that these examples do not address the requirement that the name or image used be that of a natural person, but that is not the point of the examples. As Habush and Rottier seemingly acknowledge, the point is the propriety of what Habush and Rottier label "proximity advertising" and whether the examples are comparable to the use at issue here.

Habush and Rottier assert that the competitors in these examples are permissibly taking advantage of available space in proximity to an existing competitor's location or in proximity to information about a competitor. Habush's and Rottier's appellate brief-in-chief states:

> When someone locates a dealership or a billboard next to a competitor's, he is not using the name of the competitor to achieve that result. He is using property which is open and available to locate a business or place an advertisement.

¶ 26. Thus, we understand Habush and Rottier to be conceding that if Cannon & Dunphy located a new branch office next to an established Habush Habush & Rottier office, to take advantage of the flow of people seeking out Habush Habush & Rottier because of the value of the names Habush and Rottier, the opening of the branch office would not violate § 995.50(2)(b).

¶ 27. We agree with the circuit court, and with Habush's and Rottier's apparent concession, that locating an advertisement or business near an established competitor to take advantage of the flow of potential customers or clients to the established business is not a practice the legislature intended to prohibit by adopting WIS. STAT. § 995.50(2)(b). This strategy undeniably takes advantage of the name of the established business and its ability to draw potential customers, but the strategy does not "use" the name of the business in the same way as putting the name or image of the business in an advertisement or on a product.

¶ 28. Furthermore, we fail to discern a meaningful distinction between competitors simply selecting locations in proximity to each other and using a third party to obtain the same result. As we understand the logic of Habush's and Rottier's position, the difference is

the involvement of a third party. For example, if Cannon & Dunphy called billboard companies and requested the placement of billboard advertising in proximity to existing billboard advertising using Habush's and Rottier's names, Cannon & Dunphy would be "using" those names in violation of the statute. But if an employee of Cannon & Dunphy drove around the state looking for and obtaining the same billboard space, without mentioning the names Habush and Rottier to the billboard companies, there would be no violation. We fail to discern a meaningful distinction between the two situations.

¶ 29. Although the question is a close one, we think the strategy used by Cannon & Dunphy here is akin to locating a new Cannon & Dunphy branch office next to an established Habush Habush & Rottier office when the readily apparent purpose—as with the circuit court's car dealership example—is to take advantage of the flow of people seeking out Habush Habush & Rottier because of the value associated with the names Habush and Rottier.

¶ 30. We do not, however, adopt Cannon & Dunphy's suggestion to exempt all non-visible use from coverage under the statute. There may be variations on non-visible use of a name that we are not able to anticipate. Accordingly, our holding is limited to the Internet keyword search term and results mechanism before us. As to this particular mechanism, we conclude that the more reasonable interpretation of the statute is that it is not the type of "use" the legislature had in mind when it enacted WIS. STAT. § 995.50(2)(b).

### Additional Arguments

¶ 31. Habush and Rottier make two additional arguments as to why "use" should be read to include bidding on keyword search terms.

¶ 32. First, Habush and Rottier argue that we should analogize the case before us to trademark law cases. Habush and Rottier assert that courts have concluded that bidding on keyword search terms constitutes a form of use under a federal trademark law, the Lanham Act. *See, e.g., Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 124, 129 (2d Cir. 2009); *Hearts on Fire Co. v. Blue Nile, Inc.*, 603 F. Supp. 2d 274, 278, 282 (D. Mass. 2009). According to Habush and Rottier, the rationale that underlies "use" in the trademark context applies equally here. However, we decline to look to trademark law for guidance because Habush's and Rottier's argument, attempting to tie the federal trademark case law to the meaning of the Wisconsin privacy statute at issue here, is insufficiently developed. Habush and Rottier assert that trademark case law provides helpful guidance, but they do not support that assertion with a legal analysis. We do not hold that trademark case law does not provide helpful analogies, but rather observe only that, if this is true, it is not readily apparent and Habush and Rottier do not demonstrate that it is true.

¶ 33. Second, Habush and Rottier argue that we should look to an Israeli court's decision addressing whether a medical company invaded the privacy of a doctor by bidding on his name as a keyword search term, *Klein v. Proporzia P.S.C. Ltd.*, C.A. 48511–07 (Tel Aviv-Jaffa Magistrate Court, Sept. 18, 2011). In *Klein*, the Israeli court applied a statute prohibiting an "infringement of privacy" resulting from "[t]he use of a person's name, appellation, picture or voice, for profit" to a fact pattern like the one here. *Id.* at 14. However, as with Habush's and Rottier's comparison with trademark law, we are left wondering whether the law at issue in *Klein*, and the broader legal context, is suffi-

ciently comparable to American jurisprudence and the particular law we must interpret.[9]

## Other Defenses

¶ 34. Cannon & Dunphy presents three alternative arguments that it contends are grounds for dismissing the lawsuit. First, Cannon & Dunphy asserts that the shareholder standing rule prevents Habush and Rottier from seeking relief under WIS. STAT. § 995.50(2)(b). Second, it alleges that Habush and Rottier engaged in similar advertising practices and, therefore, the doctrine of unclean hands forecloses their recovery. Finally, Cannon & Dunphy argues that, even if it did violate Habush's and Rottier's right of privacy, Cannon & Dunphy's actions are protected by the First Amendment. Because we conclude that Cannon & Dunphy did not use the names of Habush and Rottier in a manner that violates their right of privacy under § 995.50(2)(b), we need not address these defenses.

## Conclusion

¶ 35. Based on the arguments before us and on our own attempt to find helpful authority, we conclude that the more reasonable interpretation of the word "use" in WIS. STAT. § 995.50(2)(b) is that it does not cover bidding on someone's name as a keyword search term. Accordingly, we further conclude that Cannon & Dun-

---

[9] Our comments on *Klein v. Proporzia P.S.C. Ltd.*, C.A. 48511–07 (Tel Aviv-Jaffa Magistrate Court, Sept. 18, 2011), are based on an English translation version of the opinion found in Habush's and Rottier's appendix. The appendix includes a copy of a document purporting to certify that the translation is accurate. We have not taken steps to independently determine the authenticity of the case or the accuracy of the translation.

phy did not violate Habush's and Rottier's right of privacy under § 995.50(2)(b). We affirm the decision of the circuit court.

*By the Court.*—Judgment affirmed.